# Exhibit B

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2019092300104002001EBC1A |

**RECORDING AND ENDORSEMENT COVER PAGE** • **PAGE 1 OF 13**

**Document ID:** 2019092300104002    **Document Date:** 08-27-2019    **Preparation Date:** 09-23-2019
**Document Type:** MORTGAGE
**Document Page Count:** 12

| PRESENTER: | RETURN TO: |
|---|---|
| DEKEL ABSTRACT LLC<br>485 OAK GLEN ROAD<br>HOWELL, NJ 07731<br>732-813-3560<br>INFO@DEKELABSTRACT.COM | DEKEL ABSTRACT LLC<br>485 OAK GLEN ROAD<br>HOWELL, NJ 07731<br>732-813-3560<br>INFO@DEKELABSTRACT.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5488 | 50 | Entire Lot | 1567 56TH STREET |

**Property Type:** DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ or DocumentID_____ or _____Year_____ Reel____ Page_____ or. File Number_____

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| 1567 56 NY LLC<br>1567 56TH STREET<br>BROOKLYN, NY 11219 | ROSA FUNDING LLC<br>209 2ND STREET<br>LAKEWOOD, NJ 08701 |

**FEES AND TAXES**

| Mortgage: | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,200,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 1,200,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 6,000.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 13,500.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 3,000.00 | | |
| MTA: | $ | 3,570.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 26,070.00 | | |
| Recording Fee: | $ | 97.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed      09-23-2019 12:45
City Register File No.(CRFN):
2019000306592

*City Register Official Signature*

*[Handwritten at top left:]* PROPERTY IMPROVED AS A 1-2 FAMILY DWELLING.

*[Handwritten at top right:]* KINGS BLOCK 5488 LOT 50

PREPARED BY AND RECORDING REQUESTED BY:

ROSA FUNDING LLC
209 2nd St
Lakewood, NJ 08701

AND WHEN RECORDED MAIL TO:

PS FUNDING, INC.
2121 Park Place, Suite 250
El Segundo, CA 90245
Attn: Closing Department

(Space Above for Recorder's Use)

# MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Security Instrument (as hereinafter defined) serves as a Fixture Filing under the New York Uniform Commercial Code (the "Uniform Commercial Code").

DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Security Instrument and/or the corresponding Loan Documents (as hereinafter defined) are defined below.

(A) "**Borrower**" is 1567 56 NY LLC, a New York limited liability company. Borrower is the mortgagor under this Security Instrument. *[Handwritten: 1567 56TH ST BROOKLYN NY 11219]*

(B) "**Lender**" is ROSA FUNDING LLC, a New Jersey limited liability company, its successors and assigns. Lender's address is 209 2nd St, Lakewood, NJ 08701. Lender is the mortgagee under this Security Instrument.

(C) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D) "**Loan Agreement**" means that certain Loan Agreement dated August 27, 2019, between Borrower and Lender, the terms of which are incorporated herein by this reference.

(E) **"Loan Documents"** means collectively the Loan Agreement, Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(F) **"Note"** means the promissory note signed by Borrower and dated August 27, 2019. The Note states that Borrower owes Lender One Million Two Hundred Thousand and 0/100 Dollars (U.S. $1,200,000.00) and any additional amounts advanced pursuant to this Security Instrument and other Loan Documents, plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than September 1, 2020 (the **"Maturity Date"**).

(G) **"Property"** means the real property described in Exhibit A to this Security Instrument, and includes any improvements thereon.

**This Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing** (the **"Security Instrument"**) made August 27, 2019, among 1567 56 NY LLC, a New York limited liability company (the **"Borrower"**), as mortgagor, whose address is 54 Stevens Ave, Jersey City, NJ 07305, and ROSA FUNDING LLC, a New Jersey limited liability company (together with its successors and assigns, collectively, the **"Lender"**), as mortgagee, whose address is 209 2nd St, Lakewood, NJ 08701.

WITNESSETH

THAT BORROWER IRREVOCABLY GRANTS, CONVEYS, BARGAINS, TRANSFERS AND ASSIGNS TO LENDER THAT PROPERTY IN KINGS COUNTY, NY, DESCRIBED AS:

See Legal Description attached as Exhibit A and incorporated herein by reference.

Block 5488 Lot 50

Street Address: 1567 56 Street, Brooklyn, NY 11219

TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Lender by the provisions set forth below to collect and apply such rents, issues and profits (collectively, the "Property"). For the Purpose of Securing: 1. Performance of each agreement of Borrower incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by a promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $1,200,000.00 executed by Borrower in favor of Lender. 3. Payment of such further sums as the then record owner of the Property hereafter may borrow from Lender, when evidenced by another note (or notes) reciting it is so secured. 4. All obligations under the Loan Agreement.

A default under any other security instrument securing the above-referenced promissory note shall constitute a default under this Security Instrument as well.

To protect the security of this Security Instrument, Borrower agrees:

(1) That Borrower is lawfully seised of the estate hereby conveyed and has the right to

mortgage, grant and hypothecate the Property and that such Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record. Borrower further agrees that Borrower will observe and perform said provisions; and that the reference to the Property, obligations, and parties in said provisions shall be construed to refer to the Property, obligations and parties set forth in this Security Instrument.

(2)     To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

(3)     To provide, maintain and deliver to Lender fire insurance satisfactory to and with loss payable to Lender and Lender listed as additional insured, as more particularly set forth in this Security Instrument. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured herein and in such order as Lender may determine or at option of Lender the entire amount so collected or any part hereof may be released to Borrower. Such application or release shall not cure or waive any default or notice of default herein under or invalidate any act done pursuant to such notice.

(4)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Lender; and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Lender may appear, and in any suit brought by Lender to record this Security Instrument.

(5)     To not allow any additional liens to attach to the Property, regardless if the liens are junior to this Security Instrument, unless Borrower obtains prior written consent from Lender. Borrower must provide Lender with an inter-creditor or subordination agreement satisfactory to Lender, in Lender's sole and absolute discretion.

(6)     To pay; at least ten (10) days before delinquency all taxes, dues, and assessments affecting the Property, including but not limited to, condominium, planned unit development, and association dues; assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or a part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Security Instrument.

Should Borrower fail to make any payment or to do any act as herein provided, then Lender, but without obligation to do and without notice to or demand upon Borrower and without releasing Borrower from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Lender being authorized to enter upon the Property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the rights or powers of Lender; pay, purchase, contest or compromise

any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(7) To pay immediately and without demand all sums so expended by Lender, with interest from date of expenditure at the maximum amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Lender not to exceed the maximum allowed by law at the time when said statement is demanded.

(8) That any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(9) That by accepting payment of any sum secured hereby after its due date, Lender does not waive his right either to require prompt payment when due of all other sums so secured or to declare a default for failure so to pay.

(10) That at any time or from time to time, without liability therefore and without notice, upon written request of Lender and presentation of this Security Instrument and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Lender may; release any part of the Property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(11) That upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Security Instrument and said Note to Lender for cancellation and retention and upon payment of its fees, Lender shall release, without warranty, the Property held hereunder. The recitals in such RELEASE of any matters or facts shall be conclusive proof of the truthfulness thereof. The Lender in such release may be described as "The person or persons legally entitled thereto". Five years after issuance of such full RELEASE, Lender may destroy said Note and this Security Instrument (unless directed in such request to retain them).

(12) That as additional security, Borrower hereby gives to and confers upon Lender the right, power and authority during the continuance of this Security Instrument, to collect the rents, issues and profits of the Property, reserving unto Borrower the right, prior to any default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Lender may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured enter upon and take possession of the Property or any part thereof, in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonable attorneys' fees, upon the indebtedness secured hereby, and in such order as Lender may determine. The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or

notice of default hereunder or invalidate any act done pursuant to such notice. Without limiting the generality of any of the foregoing, (A) Lender shall have all rights to judicial foreclosure and deficiency judgments in accordance with Article 13 of the New York Real Property Actions and Proceedings Law and (B) without prejudice to the right to bring an action for foreclosure of this Security Instrument, sell or offer to sell, the Property or any part thereof pursuant to any procedures provided by applicable law, including, without limitation, the procedures set forth in Article 14 of the New York Real Property Actions and Proceedings Law (and any amendments or substitute statutes in regard thereto), and all estate, right, title, interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by applicable law.

(13)   That upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, under the Note secured hereby, or under the Loan Agreement, Lender may declare all sums secured hereby immediately due and payable by delivery to Lender of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Lender shall cause to be filed for record.

(14)   That this Security Instrument applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including pledges of the note secured hereby whether or not named as Lender herein. In this Security Instrument, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(15)   Borrower shall, at Borrower's expense, maintain in force fire and extended coverage insurance in any amount of not less than the full replacement value of any building which may exist on the Property, with loss payable to Lender. Borrower shall provide fire insurance protection on Borrower's furniture, fixtures and personal property on the Property in an amount equal to the full replacement value thereof, and promises that any insurance coverage in this regard will contain a waiver of the insurers' right of subrogation against Lender. In addition, Borrower shall, at Borrower's expense, maintain in force policies of liability insurance and, if applicable, flood insurance, with Lender as loss payee and as an additional insured thereunder, insuring Borrower against all claims resulting from the injury to or the death of any person or the damage to or the destruction of any property belonging to any person by reason of Lender's interest hereunder or the use and occupancy of the Property by Borrower. Such insurance shall be in the following amounts: (1) $1,000,000.00 combined single limit liability insurance covering property damage and bodily injury; and (2) flood insurance in an amount equal to the replacement cost of the Property is required if the collateral is located in a flood zone. At least thirty (30) days prior to the expiration of a policy, Borrower shall deliver to Lender a renewal policy in a form satisfactory to Lender. If Borrower obtains any other insurance on the Property, such insurance shall name the Lender as additional insured and loss payee thereunder.

(16)   If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), or a lien or encumbrance is created upon the Property, voluntarily or involuntarily, or if Borrower shall file or have filed against it and/or the Property any proceeding for relief of debtors under the United

States Bankruptcy Code, in each case without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(17)   Lender may make or cause to be made reasonable entries upon and inspections of the Property securing this Security Instrument.

(18)   Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property securing this Security Instrument or any part thereof and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender. Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Security Instrument, whether or not then due, in the order of application set forth in paragraph three (3) hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to Principal (as defined in the Note) shall not extend or postpone the due date of the monthly installments referred to in Section 3 of the Note or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

(19)   This Security Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Security Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Security Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Security Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments

and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. For purposes of filing and recording this Security Instrument in, among other places, the real estate records of the county in which the Property is located, the following information is included: (i) the Borrower shall be deemed the "Debtor" with the address set forth for the Borrower on the first page of this Security Instrument which the Borrower certifies is accurate, (ii) the Lender shall be deemed to be the "Secured Party" with the address set forth for the Lender on the first page of this Security Instrument and shall have all of the rights of a secured party under the Uniform Commercial Code, (iii) this Security Instrument covers goods which are or are to become fixtures, (iv) the name of the record owner of the land is Borrower, (v) if Borrower is an entity, the organizational identification number of Borrower is ▇▇▇▇, and the Borrower is organized under the laws of New York. Upon Borrower's breach of any covenant, representation, warranty or agreement of Borrower contained in this Security Instrument, including the covenants to pay when due all sums secured by this Security Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in this Security Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in this Security Instrument.

(20)   Any default under this Security Instrument shall constitute a default under all promissory notes and security instruments Borrower has executed in favor of Lender. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave intentionally or materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's use of the Property solely for business and/or commercial purposes.

(21)   <u>State-Specific Provisions</u>. State specific provisions, if any, are outlined on Exhibit B attached hereto and incorporated herein. In the event of any inconsistencies between the terms and conditions of this Section and any other terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

(22)   Indemnity. The Borrower agrees to indemnify Lender, each legal entity, if any who controls the Lender and each of their respective directors, officers and employees (each an "Indemnified Party", collectively the "Indemnified Parties"), and to hold each Indemnified Party harmless from and against, any and all claims, damages, losses, liabilities and expenses (including all reasonable fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Borrower), in connection with or arising out of the matters referred to in this Security Instrument

or in the other Loan Documents, whether (a) arising from or incurred in connection with any breach of a representative, warranty or covenant by the Borrower, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's willful misconduct. The indemnity agreement contained in this Section shall survive the termination of this Security Instrument, payment of any Loan and assignment of any rights hereunder.

(23)   Wherever possible, each provision of this Security Instrument shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Security Instrument shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Instrument.

(24)   **WAIVER OF JURY TRIAL.** **THE BORROWER IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS SECURITY INSTRUMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS SECURITY INSTRUMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE BORROWER ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

[SIGNATURE PAGE FOLLOWS]

    The undersigned Borrower requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him/her at his/her address hereinbefore set forth.

**BORROWER**:

1567 56 NY LLC,
a New York limited liability company

By: _____
Name: Arthur Spitzer
Title: Sole Member

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF __New York__ )
) ss
COUNTY OF __Rockland__ )

On __8/27/18__, before me, __Devorah Reinman__, a Notary Public, personally appeared _____
(Insert name and title exactly as they appear on signature page)
__Arthur Sprtzer__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __NY__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                                                                                          (Seal)

### MAIL TAX STATEMENTS AS DIRECTED ABOVE

DEVORAH REINMAN
Notary Public – State of New York
No. 01RE6291295
Qualified in Rockland County
My Commission Expires __10-15-21__

Security Instrument
Loan ID: ▇▇▇▇▇▇
Property Address: 1567 56 Street, Brooklyn, NY 11219

## EXHIBIT A

## DESCRIPTION OF PROPERTY

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, in the County of Kings, State of NY:

Known and designated as Lot 221 in Block 5 as set forth on a certain map entitled, "Map No 1 of 918 Lots Cowenhoven farm, New Utrecht, drawn by BL Williams, CE, November 1890" situated in the Borough of Brooklyn, County of Kings, State of NY, which map was filed on 07/17/1891 in the Kings County Clerk's Office as Map No. 1013.

BEGINNING at a point on the northerly side of 56th Street, distant 120 feet westerly fromo the corner formed by the intersection of the northerly side of 56th Street and the westerly side of 16th Avenue;

RUNNING THENCE northerly parallel with 16th Avenue and part of the distance through a party wall, 100 fet 2 inches;

THENCE westerly parallel with 56th Street, 20 feet;

THENCE southerly parallle with 16th Avenue, 100 feet 2 iinches to the northerly side of 56th Street;

THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING

FOR INFORMATION PURPOSES ONLY: BEING Tax Lot(s) 50 ,Tax Block 5488 on the Official Tax Map of Borough of Brooklyn, County of Kings, State of New York.

For Information Only:
Said Premise being known as 1567 56 Street, Brooklyn, NY.

District: , Section: , Tax Block: 5488, : 50   Lot 50

Exhibit A to Security Instrument - Page 1 of 1
Loan ID:
Property Address: 1567 56 Street, Brooklyn, NY 11219

## **EXHIBIT B**

## **NEW YORK STATE SPECIFIC PROVISIONS**

**Section 21.1** Inconsistencies. In the event of any inconsistencies between the terms and conditions of this Section and the terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

**Section 21.2** Agreements about New York Lien Law. Borrower shall receive all amounts lent to it by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that Borrower will (a) hold all amounts received and which it has a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before Borrower shall use them for any other purpose. The fact that Borrower holds those amounts as a trust fund means that for any building or other improvement located on the Property, Borrower is required under the law to use the amount in the manner described in this Security Instrument.

**Section 21.3** Statutory Construction. The clauses and covenants contained in this Security Instrument that are construed by Section 254 of the New York Real Property Law (other than subsection 4 thereof) shall be construed as provided in those sections. The additional clauses and covenants contained in this Security Instrument shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 of the New York Real Property Law and shall not impair, modify, alter or defeat such rights (except that the provisions of subparagraph 4 of such Section 254 shall not apply to this Security Instrument), notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254. In the event of any inconsistencies between the provisions of Section 254 and the provisions of this Security Instrument, the provisions of this Security Instrument shall prevail.

**Section 21.4** Borrower's Statement Regarding the Property. This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

**Section 21.5** Choice of Law. New York law shall exclusively govern the enforcement and interpretation of this Security Instrument.

Exhibit B to Security Instrument - Page 1 of 1
Loan ID:
Property Address: 1567 56 Street, Brooklyn, NY 11219