**Exhibit Z**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**
--------------------------------------------------------------X

PS FUNDING, INC.,

              Plaintiff,               Index No. 503948/2021

       - vs -

                                **REFEREE'S OATH**

1567 56 NY LLC; ARTHUR SPITZER; RIVY
"DOE"; ABE "DOE",

              Defendants.
--------------------------------------------------------------X

STATE OF NEW YORK

COUNTY OF KINGS

    I, Aaron Maslow, Esq., the Referee appointed by an order of this Court, made and entered in the above entitled action, and bearing date the 4th day of March, 2022 to ascertain and compute the amount due to the plaintiff for principal and interest and otherwise upon the note, mortgage and guaranty upon which this action was brought, and to examine and report whether the mortgaged premises can be sold in parcels, do solemnly swear that I will faithfully and fairly determine the questions so referred to me, and make a just and true report thereon according to the best of my understanding and as the said order requires.

                                                        _____
                                                     Aaron Maslow Esq. Referee

Sworn to before me this
_____10_____ day of _____June_____ , 20 22
_____
Notary Public

          **REBECCA A. NOVAK**
      **Notary Public, State of New York**
            **No. 5005257**
       Qualified in Nassau County
     Commission Expires 1/28 20 23

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**
---------------------------------------------------------------X

PS FUNDING, INC.,

               Plaintiff,

     - vs -

1567 56 NY LLC; ARTHUR SPITZER; RIVY
"DOE"; ABE "DOE";

               Defendants.

---------------------------------------------------------------X

Index No. 503948/2021

**REFEREE'S REPORT OF
AMOUNT DUE**

TO THE SUPREME COURT OF THE STATE OF NEW YORK: COUNTY OF KINGS:

     In pursuance of an order of this Court, made and entered in the above entitled action and

dated the 4th day of March, 2022 whereby it was referred to the undersigned as Referee to

ascertain and compute the amount due to the plaintiff for principal and interest and otherwise

upon and by virtue of the note, mortgage and guaranty upon which this action was brought, and

also to examine and report whether in her opinion the mortgaged premises can be sold in parcels.

     I, Aaron Maslow, Esq., the Referee in the said order named, DO REPORT that before the

proceeding to hear the testimony I was first duly sworn faithfully and fairly to determine the

questions referred to me, and to make a just and true report thereon, according to the best of my

understanding; that on the 7th day of April, 2022, Brett Peiffer, Authorized Signatory of PS

Funding, Inc., the plaintiff herein, submitted testimony in the form of an affidavit submitted

herewith, sworn to on April 7, 2022; that I have computed and ascertained the amount due to the

plaintiff upon and by virtue of the said note and mortgage and that I find, and accordingly report,

that there is due to the plaintiff for principal and interest on the said note and mortgage, at the

date of this Report, the sum of $1,635,321.20 plus interest from this date as provided in the

complaint, exclusive of counsel fees.

Schedule A, hereunto annexed, contains a schedule of the documentary evidence introduced before me, and shows the amount due for principal and interest respectfully, the period of the computation of the interest and its rate.

I have made inquiry as to the advisability of selling the mortgaged premises in parcels and find accordingly that the mortgaged premises should be sold in one parcel.

Dated: _____June 10_____, 20 22

_____

Aaron Maslow Esq., Referee

**SCHEDULE A**
ABSTRACT OF DOCUMENTARY EVIDENCE

One note bearing date August 27, 2019, made and executed by 1567 56 NY LLC and delivered to Rosa Funding, LLC in the sum of $1,200,000.00 with interest at the rate of 9.500% per annum. Marked Exhibit A.

One mortgage dated August 27, 2019, made and executed by 1567 56 NY LLC and delivered Rosa Funding, LLC as collateral security for the payment of the amount mentioned in the condition of the said note acknowledged August 27, 2019 and recorded in the Office of the City Register of the City of New York on September 23, 2019, under CRFN: 2019000306604. Marked Exhibit B.

One assignment of mortgage dated August 27, 2019, made and executed by Rosa Funding, LLC to PS Funding, Inc., and recorded in the in the Office of the City Register of the City of New York on September 23, 2019, under CRFN: 2019000306605. Marked Exhibit D.

One guaranty dated August 27, 2019, made and executed by Arthur Spitzer and delivered to Rosa Funding, LLC. Marked Exhibit E.

One Testimony Before Referee, sworn to by Brett Peiffer, an Authorized Signatory of PS Funding, Inc. the Plaintiff herein, sworn to on April 7, 2022.
Marked Exhibit H.

**STATEMENT**

Principal of note and mortgage unpaid as per paragraph 9 of the complaint, exclusive of counsel fees  $1,200,000.00

Late charges $2,375.00

Interest thereon from June 1, 2020, through April 15, 2022 at the rate of 9.500% per annum $251,433.33 and Interest thereon from July 1, 2020 through April 15, 2022 at the rate of 16.00% per annum $165,533.34.

Advances $15,979.53.

Total $1,635,321.26. 20. 9.2m

Dated: _June 10_, 20 22

Aaron Maslow Esq. Referee

Exhibit A

## NOTE

$1,200,000.00                                                                            Kings County, NY

### PROPERTY ADDRESS: 1569 56th St, Brooklyn, NY 11219

#### DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Note and/or the corresponding Loan Documents are defined below.

(A)     **"Borrower"** is 1567 56 NY LLC, a New York limited liability company. Borrower is the mortgagor under the Security Instrument(s) (as hereinafter defined).

(B)     **"Lender"** is ROSA FUNDING LLC, a New Jersey limited liability company, its successors and assigns.  Lender's address is 209 2nd St, Lakewood, NJ 08701. Lender is the mortgagee under the Security Instrument(s).

(C)     **"Loan"** means the debt evidenced by the Note (as hereinafter defined), plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D)     **"Loan Documents"** means collectively the Loan Agreement (as hereinafter defined), Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(E)     **"Note"** means this promissory note signed by Borrower and dated August 27, 2019.  This Note states that Borrower owes Lender One Million Two Hundred Thousand and 0/100 Dollars (U.S. $1,200,000.00) and any additional amounts advanced pursuant to the Loan Documents, plus interest.  Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than September 1, 2020 (the **"Maturity Date"**).

#### 1.     BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $1,200,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

#### 2.     INTEREST

Interest will be charged on unpaid principal, including protective or future advances as is advanced pursuant to the Loan Documents, until the full amount of such unpaid principal has been paid.  I will pay interest at a yearly rate of 9.500 %, computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months.  Interest commences on the day the lender's funds are placed in escrow.  I will pay interest on the full amount of the unpaid

principal of this Note even though the Lender may hold some of my cash or other property as collateral for repayment and even if I have prepaid payments in accordance with paragraph 3(A). For the avoidance of doubt, I understand that interest will accrue on the entire principal balance of the Loan, including portions of the Loan not yet advanced by Lender.

The interest rate required by this Section 2 is the rate I will pay before any default. If I default, the above rate shall, at the option of Lender without notice, increase to 16.000 % or the maximum rate permitted under law, whichever is less, and remain at that rate until all defaults are fully cured (the "Default Rate"). Lender and I agree that the Default Rate has been duly and adequately negotiated, and is fair and reasonable considering the costs, burdens, and other impairments foreseeably caused by, or resulting from, events of default under the Loan Documents.

3.    **PAYMENTS**

    (A)    **Time and Place of Payments**

I will pay all interest on this Note from the date of funding through the end of that month at loan closing. Thereafter I will make monthly payments on the first day of each month during the term of this Note starting with the "First Payment Date" of October 1, 2019. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date.

I will make my monthly payments payable to FCI LENDER SERVICES, INC. at P.O. Box 27370, Anaheim, CA 92809 or at a different place if required by the Note Holder. I agree to accept payment billings by email.

If I have prepaid payments when the loan was funded, Lender may retain those payments as earned in full and Lender will note in its records that the period covered by the prepaid payments has been paid as agreed. Prepaid payments shall not be applied to principal. If I repay the loan within this period, any unused prepaid funds will be credited on the payoff.

    (B)    **Amount of Monthly Payments**

My monthly interest payment ("Monthly Interest Payment") will be in the amount of U.S. $9,500.00.

    (C)    **Application of Payments.**

At Lender's sole discretion, my payments under this Note will be applied first to any late charges, fees or penalties then due, next to interest due and finally to unpaid principal. A payment will be deemed made when received at the payment address in subparagraph (A) above or at such other payment address as the Note Holder may designate from time to time.

4.    **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due subject to the Prepayment Premium (as hereinafter defined), if applicable. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that

I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. I may only make one Prepayment of Principal per month.

On the date on which a Prepayment, voluntary or mandatory, is made (including any amounts collected by Note Holder after a default), I shall pay to Note Holder (A) all accrued and unpaid interest on the amount of Principal being prepaid through and including the date of such Prepayment and (B) a prepayment premium equal to $0.00 (such amount being equal to zero (0) Monthly Interest Payments), reduced by any Monthly Interest Payment(s) previously received by Lender (the "Prepayment Premium"). Notwithstanding the foregoing, no Prepayment Premium shall be payable on a Prepayment that is required to be made as a result of a casualty to or the taking by eminent domain of the Property. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. Prepayments shall be credited to interest and Principal as of the last day of the month in which the same were received, unless payment in full is made.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ten (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the late charge will be five percent (5.00%) of my overdue payment of principal and interest or one-hundred dollars ($100), whichever is more and I agree that such charge is a reasonable estimate of the fair compensation for the loss and damages that Note Holder will suffer for such late payment. I will pay this late charge promptly but only once on each late payment.

### (B)    Default

If I do not pay the full amount of each monthly payment on the date it is due or the amount due on the Maturity Date, I will be in default.

### (C)    Notice of Default and Acceleration

If I am in default and such default is then continuing, the full amount of Principal which has not been paid, any accrued interest, all other amounts payable under this Note and any other Loan Documents, shall at once become due and payable, at the option of the Note Holder, without

any prior notice to me (except if notice is required by applicable law or the Security Instrument, then after such notice).

**(D)    No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, but are not limited to, reasonable attorneys' fees, inspection fees, appraisal fees, returned check fees and other out of pocket costs.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at 54 Stevens Ave, Jersey City, NJ 07305 or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment, Notice of Dishonor and Protest. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. "Protest" means the right to obtain an official certification of nonpayment.

I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER.

I acknowledge that prepayment of this Note may result in Note Holder's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. I, therefore, agree to pay the Prepayment Premium as described above, if any Principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Property securing the loan giving the Note Holder the right to accelerate the maturity of this Note as provided in the Security Instrument).

## 10.    SECURED NOTE

In addition to the protections given to the Note Holder under this Note, this Note is secured by that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing against the Property (the "Security Instrument"), dated the same date as this Note. The Security Instrument protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note, and in the event of default by me under this Note, the Security Instrument or other Loan Documents, Note Holder may have the right to exercise certain remedies including, without limitation, foreclosure of my interest in the Property and/or requiring me to make immediate payment in full of all amounts I owe under this Note.

## 11.    INDEMNIFIED TAXES.

Any payments by me or on account of any of my obligations under any Loan Document shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the sum payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Note Holder receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Note Holder. I shall promptly indemnify Note Holder for all such non-excluded taxes (including interest and additions to tax) and related expenses. I shall promptly deliver evidence satisfactory to Note Holder of any payments made pursuant to this Section 11. I shall also pay all documentary, recording, filing or similar taxes that arise with respect to any of the Loan Documents.

## 12.    USE OF NOTE PROCEEDS.

I, the Borrower, represent to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.

13. **LOAN AGREEMENT**.

The loan evidenced by this Note is subject to that certain Loan Agreement dated August 27, 2019 (the "Loan Agreement"), the terms of which are incorporated herein by this reference.

14. **CHOICE OF LAW**.

New York law shall exclusively govern the interpretation and enforcement of this Note.

15. **NOTICE TO BORROWER.**

DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.  ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS NOTE PROVIDES FOR A BALLOON PAYMENT WHICH WILL BE DUE ON THE DATE SPECIFIED IN PARAGRAPH 3 ABOVE, WHETHER OR NOT YOU HAVE OBTAINED A LOAN TO REPAY THIS LOAN.  YOU MAY NOT RELY UPON ANY VERBAL ASSURANCES OR AGREEMENTS BY ANY PERSONNEL OF NOTE HOLDER OR ANY MORTGAGE BROKER THAT THEY HAVE OR WILL OBTAIN OR ARRANGE A REPLACEMENT LOAN FOR YOU.  OBTAINING A REPLACEMENT LOAN IS YOUR RESPONSIBILITY.

16. **STATE SPECIFIC PROVISIONS.**

Not applicable.

17. **TIME.**

Time is of the essence in this Note.

18. **USURY.**

It is the intent of Lender and Borrower in the execution of this Note, and all other instruments now or hereafter securing this Note or executed in connection therewith or under any other written or oral agreement by Borrower in favor of Lender to contract in strict compliance with applicable usury law.

19. **SEVERABILITY.**

Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Note shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

[SIGNATURES BEGIN ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the undersigned Borrower has executed this Note as of the date first written above.

**BORROWER:**

1567 56 NY LLC,
a New York limited liability company

By: _____
Name:  Arthur Spitzer
Title:    Sole Member


**BY INITIALING BELOW, BORROWER UNDERSTANDS AND AGREES TO THE WAIVERS IN SECTION 9 ("WAIVERS").**

Borrower's Initials: _____

## ALLONGE

This Allonge is affixed to, and is hereby made a part of, that certain Note, dated August 27, 2019, in the original principal amount of $1,200,000.00 ("Note"), made by 1567 56 NY LLC, a New York limited liability company, for the benefit of ROSA FUNDING LLC, a New Jersey limited liability company ("Assignor"), and evidences the endorsement of the Note by Assignor as provided in that certain Master Loan Sale Agreement, dated February 22, 2018, by and between Assignor and the endorsee hereon ("Agreement"), to wit:

The Note is hereby made PAYABLE TO THE ORDER OF PS FUNDING, INC., a Delaware corporation, at 2121 Park Place, Suite #250, El Segundo, CA 90245, without recourse subject to the Agreement.

Dated: August 27, 2019

ASSIGNOR:

ROSA FUNDING LLC,
a New Jersey limited liability company

By: _____

Name: _____

Title: _____

1

Exhibit B

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019092300146002001EA5A9

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 13 |
|---|---|---|

| | | |
|---|---|---|
| **Document ID: 2019092300146002**<br>Document Type: MORTGAGE<br>Document Page Count: 12 | Document Date: 08-27-2019 | Preparation Date: 09-23-2019 |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| DEKEL ABSTRACT LLC<br>485 OAK GLEN ROAD<br>HOWELL, NJ 07731<br>732-813-3560<br>INFO@DEKELABSTRACT.COM | DEKEL ABSTRACT LLC<br>485 OAK GLEN ROAD<br>HOWELL, NJ 07731<br>732-813-3560<br>INFO@DEKELABSTRACT.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5488 | 49 | Entire Lot | 1569 56TH STREET |

Property Type: DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ or DocumentID_____ or _____ Year____ Reel____ Page_____ or File Number_____

**PARTIES**

| **MORTGAGOR/BORROWER:** | **MORTGAGEE/LENDER:** |
|---|---|
| 1567 56 NY LLC<br>1567 56TH STREET<br>BROOKLYN, NY 11219 | ROSA FUNDING LLC<br>209 2NS ST<br>LAKEWOOD, NJ 08701 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,200,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 1,200,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 6,000.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 13,500.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 3,000.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 3,570.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 09-23-2019 12:45 | |
| TOTAL: | $ | 26,070.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 97.00 | 2019000306604 | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M Hill*

*City Register Official Signature*



*PROPERTY IMPROVED BY A*
*1-2 FAMILY DWELLING.*

*k/j⊆/*
*BLOCK 5488*
*LOT 49*

PREPARED BY AND RECORDING REQUESTED BY:

ROSA FUNDING LLC
209 2nd St
Lakewood, NJ 08701

AND WHEN RECORDED MAIL TO:

PS FUNDING, INC.
2121 Park Place, Suite 250
El Segundo, CA 90245
Attn: Closing Department

---

(Space Above for Recorder's Use)

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Security Instrument (as hereinafter defined) serves as a Fixture Filing under the New York Uniform Commercial Code (the "Uniform Commercial Code").

<u>DEFINITIONS</u>

In addition to the capitalized terms defined where used, words used in multiple sections of this Security Instrument and/or the corresponding Loan Documents (as hereinafter defined) are defined below.

*1567 56TH ST BROOKLY1 NY 11219*

(A)     "**Borrower**" is 1567 56 NY LLC, a New York limited liability company. Borrower is the mortgagor under this Security Instrument.

(B)     "**Lender**" is ROSA FUNDING LLC, a New Jersey limited liability company, its successors and assigns. Lender's address is 209 2nd St, Lakewood, NJ 08701. Lender is the mortgagee under this Security Instrument.

(C)     "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D)     "**Loan Agreement**" means that certain Loan Agreement dated August 27, 2019, between Borrower and Lender, the terms of which are incorporated herein by this reference.

(E)    **"Loan Documents"** means collectively the Loan Agreement, Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(F)    **"Note"** means the promissory note signed by Borrower and dated August 27, 2019. The Note states that Borrower owes Lender One Million Two Hundred Thousand and 0/100 Dollars (U.S. $1,200,000.00) and any additional amounts advanced pursuant to this Security Instrument and other Loan Documents, plus interest.  Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than September 1, 2020 (the "**Maturity Date**").

(G)    **"Property"** means the real property described in Exhibit A to this Security Instrument, and includes any improvements thereon.

        **This Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing** (the **"Security Instrument"**) made August 27, 2019, among 1567 56 NY LLC, a New York limited liability company (the **"Borrower"**), as mortgagor, whose address is 54 Stevens Ave, Jersey City, NJ 07305, and ROSA FUNDING LLC, a New Jersey limited liability company (together with its successors and assigns, collectively, the **"Lender"**), as mortgagee, whose address is 209 2nd St, Lakewood, NJ 08701.

<div align="center">WITNESSETH</div>

        THAT BORROWER IRREVOCABLY GRANTS, CONVEYS, BARGAINS, TRANSFERS AND ASSIGNS TO LENDER THAT PROPERTY IN KINGS COUNTY, NY, DESCRIBED AS:

See Legal Description attached as Exhibit A and incorporated herein by reference.

Block 5488 Lot 49

Street Address:  1569 56th St, Brooklyn, NY 11219

        TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Lender by the provisions set forth below to collect and apply such rents, issues and profits (collectively, the "Property"). For the Purpose of Securing: 1.  Performance of each agreement of Borrower incorporated by reference or contained herein. 2.  Payment of the indebtedness evidenced by a promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $1,200,000.00 executed by Borrower in favor of Lender. 3.  Payment of such further sums as the then record owner of the Property hereafter may borrow from Lender, when evidenced by another note (or notes) reciting it is so secured. 4.  All obligations under the Loan Agreement.

        A default under any other security instrument securing the above-referenced promissory note shall constitute a default under this Security Instrument as well.

        To protect the security of this Security Instrument, Borrower agrees:

        (1)    That Borrower is lawfully seised of the estate hereby conveyed and has the right to

mortgage, grant and hypothecate the Property and that such Property is unencumbered, except for encumbrances of record.   Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record. Borrower further agrees that Borrower will observe and perform said provisions; and that the reference to the Property, obligations, and parties in said provisions shall be construed to refer to the Property, obligations and parties set forth in this Security Instrument.

(2)     To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

(3)     To provide, maintain and deliver to Lender fire insurance satisfactory to and with loss payable to Lender and Lender listed as additional insured, as more particularly set forth in this Security Instrument. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured herein and in such order as Lender may determine or at option of Lender the entire amount so collected or any part hereof may be released to Borrower. Such application or release shall not cure or waive any default or notice of default herein under or invalidate any act done pursuant to such notice.

(4)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Lender; and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Lender may appear, and in any suit brought by Lender to record this Security Instrument.

(5)     To not allow any additional liens to attach to the Property, regardless if the liens are junior to this Security Instrument, unless Borrower obtains prior written consent from Lender. Borrower must provide Lender with an inter-creditor or subordination agreement satisfactory to Lender, in Lender's sole and absolute discretion.

(6)     To pay; at least ten (10) days before delinquency all taxes, dues, and assessments affecting the Property, including but not limited to, condominium, planned unit development, and association dues; assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or a part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Security Instrument.

Should Borrower fail to make any payment or to do any act as herein provided, then Lender, but without obligation to do and without notice to or demand upon Borrower and without releasing Borrower from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Lender being authorized to enter upon the Property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the rights or powers of Lender; pay, purchase, contest or compromise

any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(7)     To pay immediately and without demand all sums so expended by Lender, with interest from date of expenditure at the maximum amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Lender not to exceed the maximum allowed by law at the time when said statement is demanded.

(8)     That any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(9)     That by accepting payment of any sum secured hereby after its due date, Lender does not waive his right either to require prompt payment when due of all other sums so secured or to declare a default for failure so to pay.

(10)     That at any time or from time to time, without liability therefore and without notice, upon written request of Lender and presentation of this Security Instrument and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Lender may; release any part of the Property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(11)     That upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Security Instrument and said Note to Lender for cancellation and retention and upon payment of its fees, Lender shall release, without warranty, the Property held hereunder.  The recitals in such RELEASE of any matters or facts shall be conclusive proof of the truthfulness thereof.  The Lender in such release may be described as "The person or persons legally entitled thereto".  Five years after issuance of such full RELEASE, Lender may destroy said Note and this Security Instrument (unless directed in such request to retain them).

(12)     That as additional security, Borrower hereby gives to and confers upon Lender the right, power and authority during the continuance of this Security Instrument, to collect the rents, issues and profits of the Property, reserving unto Borrower the right, prior to any default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Lender may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured enter upon and take possession of the Property or any part thereof, in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonable attorneys' fees, upon the indebtedness secured hereby, and in such order as Lender may determine. The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or

notice of default hereunder or invalidate any act done pursuant to such notice. Without limiting the generality of any of the foregoing, (A) Lender shall have all rights to judicial foreclosure and deficiency judgments in accordance with Article 13 of the New York Real Property Actions and Proceedings Law and (B) without prejudice to the right to bring an action for foreclosure of this Security Instrument, sell or offer to sell, the Property or any part thereof pursuant to any procedures provided by applicable law, including, without limitation, the procedures set forth in Article 14 of the New York Real Property Actions and Proceedings Law (and any amendments or substitute statutes in regard thereto), and all estate, right, title, interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by applicable law.

(13)     That upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, under the Note secured hereby, or under the Loan Agreement, Lender may declare all sums secured hereby immediately due and payable by delivery to Lender of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Lender shall cause to be filed for record.

(14)     That this Security Instrument applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including pledges of the note secured hereby whether or not named as Lender herein. In this Security Instrument, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(15)     Borrower shall, at Borrower's expense, maintain in force fire and extended coverage insurance in any amount of not less than the full replacement value of any building which may exist on the Property, with loss payable to Lender. Borrower shall provide fire insurance protection on Borrower's furniture, fixtures and personal property on the Property in an amount equal to the full replacement value thereof, and promises that any insurance coverage in this regard will contain a waiver of the insurers' right of subrogation against Lender. In addition, Borrower shall, at Borrower's expense, maintain in force policies of liability insurance and, if applicable, flood insurance, with Lender as loss payee and as an additional insured thereunder, insuring Borrower against all claims resulting from the injury to or the death of any person or the damage to or the destruction of any property belonging to any person by reason of Lender's interest hereunder or the use and occupancy of the Property by Borrower. Such insurance shall be in the following amounts: (1) $1,000,000.00 combined single limit liability insurance covering property damage and bodily injury; and (2) flood insurance in an amount equal to the replacement cost of the Property is required if the collateral is located in a flood zone. At least thirty (30) days prior to the expiration of a policy, Borrower shall deliver to Lender a renewal policy in a form satisfactory to Lender. If Borrower obtains any other insurance on the Property, such insurance shall name the Lender as additional insured and loss payee thereunder.

(16)     If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), or a lien or encumbrance is created upon the Property, voluntarily or involuntarily, or if Borrower shall file or have filed against it and/or the Property any proceeding for relief of debtors under the United

States Bankruptcy Code, in each case without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(17)   Lender may make or cause to be made reasonable entries upon and inspections of the Property securing this Security Instrument.

(18)   Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property securing this Security Instrument or any part thereof and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender. Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Security Instrument, whether or not then due, in the order of application set forth in paragraph three (3) hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to Principal (as defined in the Note) shall not extend or postpone the due date of the monthly installments referred to in Section 3 of the Note or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

(19)   This Security Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Security Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Security Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Security Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments

and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto.  For purposes of filing and recording this Security Instrument in, among other places, the real estate records of the county in which the Property is located, the following information is included: (i) the Borrower shall be deemed the "Debtor" with the address set forth for the Borrower on the first page of this Security Instrument which the Borrower certifies is accurate, (ii) the Lender shall be deemed to be the "Secured Party" with the address set forth for the Lender on the first page of this Security Instrument and shall have all of the rights of a secured party under the Uniform Commercial Code, (iii) this Security Instrument covers goods which are or are to become fixtures, (iv) the name of the record owner of the land is Borrower. (v) if Borrower is an entity, the organizational identification number of Borrower is ██████ and the Borrower is organized under the laws of New York. Upon Borrower's breach of any covenant, representation, warranty or agreement of Borrower contained in this Security Instrument, including the covenants to pay when due all sums secured by this Security Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in this Security Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in this Security Instrument.

(20)     Any default under this Security Instrument shall constitute a default under all promissory notes and security instruments Borrower has executed in favor of Lender.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave intentionally or materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's use of the Property solely for business and/or commercial purposes.

(21)     State-Specific Provisions.  State specific provisions, if any, are outlined on Exhibit B attached hereto and incorporated herein.  In the event of any inconsistencies between the terms and conditions of this Section and any other terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

(22)     Indemnity. The Borrower agrees to indemnify Lender, each legal entity, if any who controls the Lender and each of their respective directors, officers and employees (each an "Indemnified Party", collectively the "Indemnified Parties"), and to hold each Indemnified Party harmless from and against, any and all claims, damages, losses, liabilities and expenses (including all reasonable fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Borrower), in connection with or arising out of the matters referred to in this Security Instrument

or in the other Loan Documents, whether (a) arising from or incurred in connection with any breach of a representative, warranty or covenant by the Borrower, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's willful misconduct. The indemnity agreement contained in this Section shall survive the termination of this Security Instrument, payment of any Loan and assignment of any rights hereunder.

(23)    Wherever possible, each provision of this Security Instrument shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Security Instrument shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Instrument.

(24)    **WAIVER OF JURY TRIAL.** **THE BORROWER IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS SECURITY INSTRUMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS SECURITY INSTRUMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS.    THE BORROWER ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

[SIGNATURE PAGE FOLLOWS]

The undersigned Borrower requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him/her at his/her address hereinbefore set forth.

**BORROWER**:

1567 56 NY LLC,
a New York limited liability company

By: _____

Name: Arthur Spitzer
Title: Sole Member

Security Instrument - Page 9 of 9
Loan ID: ███████
Property Address: 1569 56th St, Brooklyn, NY 11219

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___New York___ )
                                               ) ss
COUNTY OF ___Rockland___ )

On ___8/27/19___, before me, ___Devoral Reinmer___, a Notary Public,
personally appeared _____
<small>(Insert name and title exactly as they appear on signature page)</small>
___Arthur   Spitzer___,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___New York___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                                                                                                   (Seal)

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

DEVORAH REINMAN
Notary Public – State of New York
No. 01RE6291295
Qualified in Rockland County
My Commission Expires ___10-15-21___

Security Instrument
Loan ID: ████████
Property Address: 1569 56th St, Brooklyn, NY 11219

## EXHIBIT A

### DESCRIPTION OF PROPERTY

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, in the County of Kings, State of NY:

BEGINNING at a point on the northerly side of 56th Street, distant 100 feet westerly from the corner formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th Avenue;

RUNNING THENCE northerly parallel with 16th Avenue 100 feet 2 inches;

THENCE westerly parallel with 56th Street, 20 feet;

THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street;

THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING

FOR INFORMATION PURPOSES ONLY: BEING Tax Lot(s) 49 ,Tax Block 5488 on the Official Tax Map of Borough of Brooklyn, County of Kings, State of New York.

For Information Only:
Said Premise being known as 1569 56 Street, Brooklyn, NY.

District: , Section: , Tax Block: 5488, : LoT 49

## EXHIBIT B

## NEW YORK STATE SPECIFIC PROVISIONS

**Section 21.1**   Inconsistencies.  In the event of any inconsistencies between the terms and conditions of this Section and the terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

**Section 21.2**   Agreements about New York Lien Law.  Borrower shall receive all amounts lent to it by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that Borrower will (a) hold all amounts received and which it has a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before Borrower shall use them for any other purpose.  The fact that Borrower holds those amounts as a trust fund means that for any building or other improvement located on the Property, Borrower is required under the law to use the amount in the manner described in this Security Instrument.

**Section 21.3**   Statutory Construction.   The clauses and covenants contained in this Security Instrument that are construed by Section 254 of the New York Real Property Law (other than subsection 4 thereof) shall be construed as provided in those sections.  The additional clauses and covenants contained in this Security Instrument shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 of the New York Real Property Law and shall not impair, modify, alter or defeat such rights (except that the provisions of subparagraph 4 of such Section 254 shall not apply to this Security Instrument), notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254.  In the event of any inconsistencies between the provisions of Section 254 and the provisions of this Security Instrument, the provisions of this Security Instrument shall prevail.

**Section 21.4**   Borrower's Statement Regarding the Property.  This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

**Section 21.5**   Choice of Law.  New York law shall exclusively govern the enforcement and interpretation of this Security Instrument.

Exhibit B to Security Instrument - Page 1 of 1
Loan ID: ▮▮▮▮▮▮
Property Address: 1569 56th St, Brooklyn, NY 11219

Exhibit C

Case 1:23-cv-08887-DEH Document 6-26 Filed 10/26/23 Page 31 of 135

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------------X
PS FUNDING, INC.,                                    **Index No.**

                    Plaintiff,                       **<u>SUMMONS</u>**

          Against

                                                     Plaintiff designates Kings County
1567 56 NY LLC, ARTHUR SPITZER, and                  as the place for trial.  Venue is based
JANE/JOHN DOE Nos. 1-12                               on the location of the mortgaged
                                                     Premises: 1569 56th St.,
                    Defendants,                      Brooklyn, NY 11219
--------------------------------------------------------------------X

**TO THE ABOVE-NAMED DEFENDANTS:**

          You are summoned to answer the complaint in the above-entitled action and to serve a
copy of your answer on the plaintiff's attorney within 20 days after service of this summons,
exclusive of the day of service, or within 30 days after completion of service where service is
made in any other manner than by personal delivery within the state.  The United States of
America, if designated as defendant in this action, may answer or appear within 60 days of
service of this notice.  In case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

          **PLEASE TAKE NOTICE**, that this is an action to foreclose: a certain Mortgage,
Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") in the
principal amount of **$1,200,000.00 Dollars,** upon real property commonly known as 1569 56th
Street, Brooklyn, NY 11219 in Kings County.

          The relief sought in the within action is a final judgment directing the sale of the premises
described above to satisfy the debts secured by the aforementioned Mortgage.  The Plaintiff also
seeks a deficiency judgment against defendants 1567 NY LLC and Arthur Spitzer for any debts
secured by the Mortgage which are not satisfied by the proceeds of the sale of said premises.

          To the defendants, Jane/John Doe Nos. 1-12:  the Plaintiff makes no personal claim
against you.  The claim for a deficiency judgment is made only against 1567 NY LLC and
Arthur Spitzer and not against you.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

CHARTWELL LAW

Dated: February 18, 2021

By: _____
Charles J. Barreras, Esq.
*Attorneys for Plaintiff*
*PS FUNDING, INC.*
One Battery Park Plaza, Suite 701
New York, NY 10004-1445
Telephone: (212) 968-2300
Facsimile: (212) 968-2400

TO:

**1567 56 NY LLC**
1567 56th Street
Brooklyn, NY 11219
*(Sent via Secretary of State)*

**1567 56 NY LLC**
54 Stevens Ave.
Jersey City, NJ 07305
*(Sent via Personal Service)*

**1567 56 NY LLC**
c/o Arthur Spitzer, Managing Member
123 Ave I
Brooklyn, NY 11230
*(Sent via Personal Service)*

**ARTHUR SPITZER**
123 Ave I
Brooklyn, NY 11230
*(Sent via Personal Service)*

**JANE/JOHN DOE NOS. 1-12**
1569 56th Street
Brooklyn, NY 11219

## NOTICE TO DEFENDANT

DURING THE CORONAVIRUS EMERGENCY, YOU MIGHT BE ENTITLED BY LAW TO TAKE ADDITIONAL DAYS OR WEEKS TO FILE AN ANSWER TO THIS COMPLAINT.

PLEASE CONTACT YOUR ATTORNEY FOR MORE INFORMATION.

IF YOU DON'T HAVE AN ATTORNEY,

PLEASE VISIT

http://ww2.nycourts.gov/admin/OPP/foreclosures.shtml

OR

https://www.nycourts.gov/courthelp/Homes/foreclosures.shtml

AVISO A DEMANDADO

DURANTE LA EMERGENCIA DEL CORONAVIRUS,

ES POSIBLE QUE USTED TENGA DERECHO POR LEY

A TOMAR DÍAS O SEMANAS ADICIONALES

PARA PRESENTAR UNA RESPUESTA

A ESTA PETICIÓN

POR FAVOR CONTACTE A SU ABOGADO PARA MAS
INFORMACIÓN.

SI USTED NO TIENE UN ABOGADO,

VISITE

http://ww2.nycourts.gov/admin/OPP/foreclosures.shtml

O

https://www.nycourts.gov/courthelp/Homes/foreclosures.shtml

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

PS FUNDING, INC.,

                Plaintiff,

          Against

1567 56 NY LLC, ARTHUR SPITZER, and
JANE/JOHN DOE Nos. 1-12

                Defendants,

-------------------------------------------------------------------X

**Index No.**

**<u>VERIFIED COMPLAINT</u>**

Mortgaged Premises:
1569 56th St., Brooklyn, NY 11219

The Plaintiff, PS FUNDING, INC., by its attorneys, CHARTWELL LAW, complains of the above-captioned Defendants respectively alleges upon information and belief as follows:

## <u>AS AND FOR A FIRST CAUSE OF ACTION</u>

1.     At all relevant times, Plaintiff was a corporation organized and existing under the laws of the State of Delaware, with a place of business or address for purposes of service of notices and papers located at 2121 Park Place, Suite 250, El Segundo, CA 90245.

2.     Defendant, 1567 56 NY LLC is a limited liability company, organized and existing under the laws of the State of New York, with a place of business or address for purposes of service of notices and papers located at 54 Stevens Ave., Jersey City, NJ 07305, and/or in care of its Managing Member, Arthur Spitzer, at 123 Ave I, Brooklyn, NY 11230 ("Borrower").  It is joined in its capacity as the grantor of the mortgage and owner of the mortgaged premises in question.

3.     Defendant, Arthur Spitzer, is an adult individual, living and residing or otherwise maintaining an address for purpose of service of notices and papers at 123 Ave I, Brooklyn, NY 11230, and is both the managing member of the Borrower, and a guarantor of its obligations to the Plaintiff.

1

4.      Defendants, Jane/John Does 1-12, are unknown individuals who either reside at the mortgaged premises involved in this matter, or otherwise assert an interest therein which is junior and subject to Plaintiff's mortgage.

5.      Borrower, for the purposes of evidencing its obligation to repay a loan from Rosa Funding LLC ("Lender") of the sum of $1,200,000.00, with interest, on August 27, 2019, for valuable consideration, executed and delivered to Lender a note, a copy of which is attached to this Complaint and marked as **Exhibit "A"** (the "Note").

6.      As collateral security for the payment of the indebtedness, Borrower, as mortgagor, on the same day executed, acknowledged and delivered to Lender, as mortgagee, a mortgage, which mortgage was duly recorded in the City Register of the City of New York on September 23, 2019 at CRFN 2019000306604, at 12:40 o'clock p.m., and the mortgage tax of $26,070.00 was duly paid.  The following was mortgaged by Borrower to the mortgagee:

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, in the County of Kings, State of NY:

BEGINNING at a point on the northerly line of 56th Street, distant 100 feet westerly from the corner formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th Avenue;

RUNNING THENCE northerly parallel with 16th Avenue 100 feet 2 inches;

THENCE westerly parallel with 56th Street, 20 feet;

THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street;

THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING.

FOR INFORMATION PURPOSES ONLY: Being Tax Lot(s) 49, Tax Block 5488 on the Official Tax Map of Borough of Brooklyn, County of Kings, State of New York.

For information only: Said premises being known as 1569 56th Street, Brooklyn, NY.

Case 1:23-cv-08887-DEH  Document 6-26  Filed 10/26/23  Page 37 of 135

Together with all the right, title and interest, if any, of the mortgagor in and to the streets and avenues in front of or adjoining the premises to the respective centre lines of the premises.

A copy of the mortgage is attached to this Complaint and marked as **Exhibit "B"** (the "Mortgage").

7. The Mortgage provided that in case of default in the payment of the sum of money secured by the Mortgage or of any part of the sum, or of the interest that might come due, plaintiff was empowered to sell the mortgaged premises according to law and that the Mortgage expressly provided that in case of a sale under foreclosure, the premises might be sold as one parcel.

8. Plaintiff is the owner and holder of the Note and Mortgage by virtue of assignment thereof from the Lender, as evidenced by an Allonge to Note, and by an Assignment of Mortgage, true copies of which are attached hereto as **Exhibits "C" and "D"**, respectively.

9. Defendants have failed to comply with the terms and conditions of the Note and Mortgage by failing and omitting to pay Plaintiff all payments of coming due under the Note and Mortgage, and any applicable grace period has expired. Plaintiff elects to declare the entire principal sum secured by the Note and Mortgage to become immediately due and payable, and such principal balance as of the date of default and as of the time of this Complaint is $1,200,000.00.

10. In order to protect its security, Plaintiff may be compelled during the pendency of this action to pay sums for premiums on policies of fire insurance, taxes, assessments, water rates and other charges affecting the mortgaged premises and plaintiff prays that any sum or sums it pays, together with interest at the rate of 16.0% *per annum*, from the date of the payment, will be added to the Plaintiff's claim and be deemed secured by the note and mortgage and adjudged to

3

Case 1:23-cv-08887-DEH   Document 6-26   Filed 10/26/23   Page 38 of 135

be a valid lien on the premises.  Further, Plaintiff prays that it be paid such sums, together with interest, out of the proceeds of the sale of the premises.

11.    On information and belief, the Defendants and each of them have or claim to have some interest in or lien on the mortgaged premises or some part of the mortgaged premises, which interest or lien, if any, has accrued subsequently to the lien of the mortgage and is subject and subordinate to it.

12.    No other action or proceeding has been brought for the recovery of the sum secured by the Note and Mortgage.

13.    The premises under foreclosure are subject to any state of facts an accurate survey may show, and to covenants, restrictions and easements, if any, of record affecting the premises, and to zoning regulations and ordinances of the city in which the premises lie.

## AS AND FOR A SECOND CAUSE OF ACTION

14.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-13 above.

15.    On or about August 27, 2019, Arthur Spitzer ("Guarantor") executed a Guaranty, whereby defendant absolutely and unconditionally guaranteed the payment of any and all obligations of Borrower, 1567 56 NY LLC, as further security for the Note (the "Guaranty"), a true copy of which is attached hereto as **Exhibit "E"**.

16.    Upon said Borrower's default under the terms of the Note, demands were made upon Guarantor for payment of the debt. However, said defendant did not make any payment and failed to perform under the Guaranty.

17.    Defendant, 1567 56 NY LLC, as borrower and defendant, Arthur Spitzer, as guarantor, are jointly and severally liable to the Plaintiff for any and all amounts due on the Note

Case 1:23-cv-08887-DEH   Document 6-26   Filed 10/26/23   Page 39 of 135

and Mortgage, as well as for any deficiency.

### AS AND FOR A THIRD CAUSE OF ACTION

18.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-17 above.

19.     Pursuant to the Note, Mortgage, and Guaranty hereinbefore described, Defendants 1567 56 NY LLC, and Arthur Spitzer agreed to pay the reasonable attorneys' fees of the holder of the Mortgage in the event of a default and the commencement of a suit to foreclose same.

**WHEREFORE,** Plaintiff demands judgment that the Defendants and all persons claiming under them or any of them subsequent to the filing of the notice of pendency in this action, may be forever barred and foreclosed on all right, claim, lien and equity of redemption in the mortgaged premises.

Further, Plaintiff requests that a receiver of the rents, issues and profits of the mortgaged premises be appointed in behalf of Plaintiff without notice during the pendency of this action. Plaintiff prays that the premises may be decreed to be sold according to law and that the money arising from the sale may be brought into court.

Plaintiff prays that it may be paid the amount of principal and interest due on the note and mortgage with interest to the time of the payment and the costs and disbursements of this action, so far as the amount of the money thereto will cover these costs, together with any sum or sums paid by Plaintiff to protect the security afforded by the mortgage with interest from the time of the payment, and that Defendants, 1567 56 NY LLC, and Arthur Spitzer be adjudged to pay any deficiency which may remain after applying all of the sale proceeds.

Plaintiff further prays for any further relief in the premises as may just and equitable. Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of the

subject premises by virtues of its position as a judgment or other lien creditor excluding the

mortgage being foreclosed.

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

Dated: February 18, 2021

**CHARTWELL LAW**

By: _____
Charles J. Barreras, Esq.
*Attorneys for Plaintiff*
*PS FUNDING, INC.*
One Battery Park Plaza, Suite 701
New York, NY 10004-1445
Telephone: (212) 968-2300
Facsimile: (212) 968-2400

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------X

PS FUNDING, INC.,

                           Plaintiff,

              Against

1567 56 NY LLC, ARTHUR SPITZER, and
JANE/JOHN DOE Nos. 1-12

                    Defendants,

------------------------------------------------------------X

**Index No.**

**AFFIDAVIT OF PLAINTIFF**

Mortgaged Premises:
1569 56th St., Brooklyn, NY 11219

State of _North Carolina_ :

                        : ss

County of _Mecklenburg_ :

_Hugh Humphreys_ , being duly sworn, deposes and says:

1.    I am a _Director_ , a representative of plaintiff in the
above-captioned mortgage foreclosure action. I am authorized to execute this affidavit
and am fully aware of the underlying action, as well as the papers and proceedings
heretofore had herein.

2.    This Affidavit is made in further support of plaintiff's counsel's affirmation pursuant to
the October 2020 Administrative Order of the Chief Administrative Judge of the Courts
of New York, as supplemented.

3.    I have performed the following actions in order to confirm the truth and veracity of the
statements made herein. This review is based on my access to the books and records
relating to this loan which are kept in the ordinary course of business:

    A.    Confirmed the notice of default, if required, was properly mailed prior to
commencement of foreclosure.

    B.    Reviewed the summons and complaint in this action to confirm the factual
accuracy of the identity of the proper plaintiff, the defaults and the amounts
claimed to be due to plaintiff as set forth herein.

    C.    Confirmed the affidavit(s) executed and submitted by plaintiff together with
this application have been personally reviewed by the signatory; that the notary
acknowledging the affiant's signature followed applicable law in notarizing the
affiant's signature.

    D.    ____ I am unable to confirm or deny that the underlying documents previously
filed with the Court have been properly reviewed or notarized.

1

E. ____ Inasmuch as the underlying mortgage loan has been transferred prior to commencement or during the pendency of this action, I am unable to confirm or deny that the underlying documents filed with the Court have been properly reviewed or notarized by the prior servicer.

F. ____ (other) _____

_____

_____

WHEREFORE, it is respectfully requested that the Court grant the proposed relief requested herein together with such other relief as the Court deems just and proper.

PS Funding, Inc.

By: _____

Hugh Humphreys (name)

Director (title)

STATE OF North Carolina )

) ss.

COUNTY OF Mecklenburg )

On the 15th day of December , in the year 2020 before me, the undersigned, personally appeared Hugh Humphreys (name), personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person or entity upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned.

In witness whereof, I hereunto set my hand and Notarial Seal, as of the date set forth above.

NOTARY PUBLIC:

MATTHEW D DAMERON
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
9-1-2021

By: _____

Matthew Dameron (name)

My commission expires:

2

# Exhibit A

## NOTE

$1,200,000.00                                                    Kings County, NY

### PROPERTY ADDRESS: 1569 56th St, Brooklyn, NY 11219

DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Note and/or the corresponding Loan Documents are defined below.

(A)    **"Borrower"** is 1567 56 NY LLC, a New York limited liability company. Borrower is the mortgagor under the Security Instrument(s) (as hereinafter defined).

(B)    **"Lender"** is ROSA FUNDING LLC, a New Jersey limited liability company, its successors and assigns.  Lender's address is 209 2nd St, Lakewood, NJ 08701. Lender is the mortgagee under the Security Instrument(s).

(C)    **"Loan"** means the debt evidenced by the Note (as hereinafter defined), plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D)    **"Loan Documents"** means collectively the Loan Agreement (as hereinafter defined), Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(E)    **"Note"** means this promissory note signed by Borrower and dated August 27, 2019.  This Note states that Borrower owes Lender One Million Two Hundred Thousand and 0/100 Dollars (U.S. $1,200,000.00) and any additional amounts advanced pursuant to the Loan Documents, plus interest.  Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than September 1, 2020 (the **"Maturity Date"**).

1.    **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $1,200,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.    **INTEREST**

Interest will be charged on unpaid principal, including protective or future advances as is advanced pursuant to the Loan Documents, until the full amount of such unpaid principal has been paid. I will pay interest at a yearly rate of 9.500 %, computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months.  Interest commences on the day the lender's funds are placed in escrow.  I will pay interest on the full amount of the unpaid

Note - Page 1 of 7
Loan ID: <span style="background:black">████</span>
Property Address: 1569 56th St, Brooklyn, NY 11219

principal of this Note even though the Lender may hold some of my cash or other property as collateral for repayment and even if I have prepaid payments in accordance with paragraph 3(A). For the avoidance of doubt, I understand that interest will accrue on the entire principal balance of the Loan, including portions of the Loan not yet advanced by Lender.

The interest rate required by this Section 2 is the rate I will pay before any default. If I default, the above rate shall, at the option of Lender without notice, increase to 16.000 % or the maximum rate permitted under law, whichever is less, and remain at that rate until all defaults are fully cured (the "Default Rate"). Lender and I agree that the Default Rate has been duly and adequately negotiated, and is fair and reasonable considering the costs, burdens, and other impairments foreseeably caused by, or resulting from, events of default under the Loan Documents.

## 3.   PAYMENTS

### (A)   Time and Place of Payments

I will pay all interest on this Note from the date of funding through the end of that month at loan closing. Thereafter I will make monthly payments on the first day of each month during the term of this Note starting with the "First Payment Date" of October 1, 2019. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date.

I will make my monthly payments payable to FCI LENDER SERVICES, INC. at P.O. Box 27370, Anaheim, CA 92809 or at a different place if required by the Note Holder. I agree to accept payment billings by email.

If I have prepaid payments when the loan was funded, Lender may retain those payments as earned in full and Lender will note in its records that the period covered by the prepaid payments has been paid as agreed. Prepaid payments shall not be applied to principal. If I repay the loan within this period, any unused prepaid funds will be credited on the payoff.

### (B)   Amount of Monthly Payments

My monthly interest payment ("Monthly Interest Payment") will be in the amount of U.S. $9,500.00.

### (C)   Application of Payments.

At Lender's sole discretion, my payments under this Note will be applied first to any late charges, fees or penalties then due, next to interest due and finally to unpaid principal. A payment will be deemed made when received at the payment address in subparagraph (A) above or at such other payment address as the Note Holder may designate from time to time.

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due subject to the Prepayment Premium (as hereinafter defined), if applicable. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that

Note - Page 2 of 7
Loan ID: ▆▆▆▆▆▆▆
Property Address: 1569 56th St, Brooklyn, NY 11219

I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. I may only make one Prepayment of Principal per month.

On the date on which a Prepayment, voluntary or mandatory, is made (including any amounts collected by Note Holder after a default), I shall pay to Note Holder (A) all accrued and unpaid interest on the amount of Principal being prepaid through and including the date of such Prepayment and (B) a prepayment premium equal to $0.00 (such amount being equal to zero (0) Monthly Interest Payments), reduced by any Monthly Interest Payment(s) previously received by Lender (the "Prepayment Premium"). Notwithstanding the foregoing, no Prepayment Premium shall be payable on a Prepayment that is required to be made as a result of a casualty to or the taking by eminent domain of the Property. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. Prepayments shall be credited to interest and Principal as of the last day of the month in which the same were received, unless payment in full is made.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ten (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the late charge will be five percent (5.00%) of my overdue payment of principal and interest or one-hundred dollars ($100), whichever is more and I agree that such charge is a reasonable estimate of the fair compensation for the loss and damages that Note Holder will suffer for such late payment. I will pay this late charge promptly but only once on each late payment.

### (B)    Default

If I do not pay the full amount of each monthly payment on the date it is due or the amount due on the Maturity Date, I will be in default.

### (C)    Notice of Default and Acceleration

If I am in default and such default is then continuing, the full amount of Principal which has not been paid, any accrued interest, all other amounts payable under this Note and any other Loan Documents, shall at once become due and payable, at the option of the Note Holder, without

Note - Page 3 of 7
Loan ID:
Property Address: 1569 56th St, Brooklyn, NY 11219

any prior notice to me (except if notice is required by applicable law or the Security Instrument, then after such notice).

### (D)    No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)    Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, but are not limited to, reasonable attorneys' fees, inspection fees, appraisal fees, returned check fees and other out of pocket costs.

## 7.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at 54 Stevens Ave, Jersey City, NJ 07305 or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.    WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment, Notice of Dishonor and Protest. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. "Protest" means the right to obtain an official certification of nonpayment.

I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER.

I acknowledge that prepayment of this Note may result in Note Holder's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. I, therefore, agree to pay the Prepayment Premium as described above, if any Principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Property securing the loan giving the Note Holder the right to accelerate the maturity of this Note as provided in the Security Instrument).

## 10.   SECURED NOTE

In addition to the protections given to the Note Holder under this Note, this Note is secured by that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing against the Property (the "Security Instrument"), dated the same date as this Note. The Security Instrument protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note, and in the event of default by me under this Note, the Security Instrument or other Loan Documents, Note Holder may have the right to exercise certain remedies including, without limitation, foreclosure of my interest in the Property and/or requiring me to make immediate payment in full of all amounts I owe under this Note.

## 11.   INDEMNIFIED TAXES.

Any payments by me or on account of any of my obligations under any Loan Document shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the sum payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Note Holder receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Note Holder. I shall promptly indemnify Note Holder for all such non-excluded taxes (including interest and additions to tax) and related expenses. I shall promptly deliver evidence satisfactory to Note Holder of any payments made pursuant to this Section 11. I shall also pay all documentary, recording, filing or similar taxes that arise with respect to any of the Loan Documents.

## 12.   USE OF NOTE PROCEEDS.

I, the Borrower, represent to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.

Case 1:23-cv-08887-DEH   Document 6-26   Filed 10/26/23   Page 49 of 135

13.     **LOAN AGREEMENT**.

The loan evidenced by this Note is subject to that certain Loan Agreement dated August 27, 2019 (the "Loan Agreement"), the terms of which are incorporated herein by this reference.

14.     **CHOICE OF LAW**.

New York law shall exclusively govern the interpretation and enforcement of this Note.

15.     **NOTICE TO BORROWER**.

DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS NOTE PROVIDES FOR A BALLOON PAYMENT WHICH WILL BE DUE ON THE DATE SPECIFIED IN PARAGRAPH 3 ABOVE, WHETHER OR NOT YOU HAVE OBTAINED A LOAN TO REPAY THIS LOAN. YOU MAY NOT RELY UPON ANY VERBAL ASSURANCES OR AGREEMENTS BY ANY PERSONNEL OF NOTE HOLDER OR ANY MORTGAGE BROKER THAT THEY HAVE OR WILL OBTAIN OR ARRANGE A REPLACEMENT LOAN FOR YOU. OBTAINING A REPLACEMENT LOAN IS YOUR RESPONSIBILITY.

16.     **STATE SPECIFIC PROVISIONS**.

Not applicable.

17.     **TIME**.

Time is of the essence in this Note.

18.     **USURY**.

It is the intent of Lender and Borrower in the execution of this Note, and all other instruments now or hereafter securing this Note or executed in connection therewith or under any other written or oral agreement by Borrower in favor of Lender to contract in strict compliance with applicable usury law.

19.     **SEVERABILITY**.

Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Note shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.


[SIGNATURES BEGIN ON THE FOLLOWING PAGE]


Note - Page 6 of 7
Loan ID: ▮▮▮▮▮▮
Property Address: 1569 56th St, Brooklyn, NY 11219

IN WITNESS WHEREOF, the undersigned Borrower has executed this Note as of the date first written above.

**BORROWER:**

1567 56 NY LLC,
a New York limited liability company

By: _____
Name: Arthur Spitzer
Title: Sole Member

**BY INITIALING BELOW, BORROWER UNDERSTANDS AND AGREES TO THE WAIVERS IN SECTION 9 ("WAIVERS").**

Borrower's Initials: _____

# Exhibit B



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2019092300146002001EA5A9

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 13 |
|---|---|---|
| **Document ID:** 2019092300146002 | **Document Date:** 08-27-2019 | **Preparation Date:** 09-23-2019 |

Document Type: MORTGAGE
Document Page Count: 12

| PRESENTER: | RETURN TO: |
|---|---|
| DEKEL ABSTRACT LLC<br>485 OAK GLEN ROAD<br>HOWELL, NJ 07731<br>732-813-3560<br>INFO@DEKELABSTRACT.COM | DEKEL ABSTRACT LLC<br>485 OAK GLEN ROAD<br>HOWELL, NJ 07731<br>732-813-3560<br>INFO@DEKELABSTRACT.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5488 | 49 | Entire Lot | 1569 56TH STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____ _or_ DocumentID_____ _or_ _____ Year____ Reel____ Page____ _or_ File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| 1567 56 NY LLC<br>1567 56TH STREET<br>BROOKLYN, NY 11219 | ROSA FUNDING LLC<br>209 2NS ST<br>LAKEWOOD, NJ 08701 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,200,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 1,200,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 6,000.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 13,500.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 3,000.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 3,570.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed | 09-23-2019 12:45 |
| TOTAL: | $ | 26,070.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 97.00 | | **2019000306604** |
| Affidavit Fee: | $ | 0.00 | | |

_annetta M Hill_

*City Register Official Signature*

PRePeRTY IMPRoved BY A
1-2 fAMily DWellIG.

k/2oS
BLock 5488
LoT 49

PREPARED BY AND RECORDING REQUESTED BY:

ROSA FUNDING LLC
209 2nd St
Lakewood, NJ 08701

AND WHEN RECORDED MAIL TO:

PS FUNDING, INC.
2121 Park Place, Suite 250
El Segundo, CA 90245
Attn: Closing Department

(Space Above for Recorder's Use)

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Security Instrument (as hereinafter defined) serves as a Fixture Filing under the New York Uniform Commercial Code (the "Uniform Commercial Code").

### DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Security Instrument and/or the corresponding Loan Documents (as hereinafter defined) are defined below.

1567 56TH ST BRcokly I NY 11219

(A)   "Borrower" is 1567 56 NY LLC, a New York limited liability company. Borrower is the mortgagor under this Security Instrument.

(B)   "Lender" is ROSA FUNDING LLC, a New Jersey limited liability company, its successors and assigns. Lender's address is 209 2nd St, Lakewood, NJ 08701. Lender is the mortgagee under this Security Instrument.

(C)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

(D)   "Loan Agreement" means that certain Loan Agreement dated August 27, 2019, between Borrower and Lender, the terms of which are incorporated herein by this reference.

Security Instrument - Page 1 of 9
Loan ID:
Property Address: 1569 56th St, Brooklyn, NY 11219

(E) **"Loan Documents"** means collectively the Loan Agreement, Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(F) **"Note"** means the promissory note signed by Borrower and dated August 27, 2019. The Note states that Borrower owes Lender One Million Two Hundred Thousand and 0/100 Dollars (U.S. $1,200,000.00) and any additional amounts advanced pursuant to this Security Instrument and other Loan Documents, plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than September 1, 2020 (the "**Maturity Date**").

(G) **"Property"** means the real property described in Exhibit A to this Security Instrument, and includes any improvements thereon.

This Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture **Filing** (the **"Security Instrument"**) made August 27, 2019, among 1567 56 NY LLC, a New York limited liability company (the **"Borrower"**), as mortgagor, whose address is 54 Stevens Ave, Jersey City, NJ 07305, and ROSA FUNDING LLC, a New Jersey limited liability company (together with its successors and assigns, collectively, the **"Lender"**), as mortgagee, whose address is 209 2nd St, Lakewood, NJ 08701.

## WITNESSETH

THAT BORROWER IRREVOCABLY GRANTS, CONVEYS, BARGAINS, TRANSFERS AND ASSIGNS TO LENDER THAT PROPERTY IN KINGS COUNTY, NY, DESCRIBED AS:

See Legal Description attached as Exhibit A and incorporated herein by reference.

Block 5488 Lot 49

Street Address: 1569 56th St, Brooklyn, NY 11219

TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Lender by the provisions set forth below to collect and apply such rents, issues and profits (collectively, the "Property"). For the Purpose of Securing: 1. Performance of each agreement of Borrower incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by a promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $1,200,000.00 executed by Borrower in favor of Lender. 3. Payment of such further sums as the then record owner of the Property hereafter may borrow from Lender, when evidenced by another note (or notes) reciting it is so secured. 4. All obligations under the Loan Agreement.

A default under any other security instrument securing the above-referenced promissory note shall constitute a default under this Security Instrument as well.

To protect the security of this Security Instrument, Borrower agrees:

(1) That Borrower is lawfully seised of the estate hereby conveyed and has the right to

mortgage, grant and hypothecate the Property and that such Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record. Borrower further agrees that Borrower will observe and perform said provisions; and that the reference to the Property, obligations, and parties in said provisions shall be construed to refer to the Property, obligations and parties set forth in this Security Instrument.

(2)    To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

(3)    To provide, maintain and deliver to Lender fire insurance satisfactory to and with loss payable to Lender and Lender listed as additional insured, as more particularly set forth in this Security Instrument. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured herein and in such order as Lender may determine or at option of Lender the entire amount so collected or any part hereof may be released to Borrower. Such application or release shall not cure or waive any default or notice of default herein under or invalidate any act done pursuant to such notice.

(4)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Lender; and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Lender may appear, and in any suit brought by Lender to record this Security Instrument.

(5)    To not allow any additional liens to attach to the Property, regardless if the liens are junior to this Security Instrument, unless Borrower obtains prior written consent from Lender. Borrower must provide Lender with an inter-creditor or subordination agreement satisfactory to Lender, in Lender's sole and absolute discretion.

(6)    To pay; at least ten (10) days before delinquency all taxes, dues, and assessments affecting the Property, including but not limited to, condominium, planned unit development, and association dues; assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or a part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Security Instrument.

Should Borrower fail to make any payment or to do any act as herein provided, then Lender, but without obligation to do and without notice to or demand upon Borrower and without releasing Borrower from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Lender being authorized to enter upon the Property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the rights or powers of Lender; pay, purchase, contest or compromise

Security Instrument - Page 3 of 9
Loan ID: ▮▮▮▮▮▮
Property Address: 1569 56th St, Brooklyn, NY 11219

any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(7)     To pay immediately and without demand all sums so expended by Lender, with interest from date of expenditure at the maximum amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Lender not to exceed the maximum allowed by law at the time when said statement is demanded.

(8)     That any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(9)     That by accepting payment of any sum secured hereby after its due date, Lender does not waive his right either to require prompt payment when due of all other sums so secured or to declare a default for failure so to pay.

(10)     That at any time or from time to time, without liability therefore and without notice, upon written request of Lender and presentation of this Security Instrument and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Lender may; release any part of the Property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(11)     That upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Security Instrument and said Note to Lender for cancellation and retention and upon payment of its fees, Lender shall release, without warranty, the Property held hereunder. The recitals in such RELEASE of any matters or facts shall be conclusive proof of the truthfulness thereof. The Lender in such release may be described as "The person or persons legally entitled thereto". Five years after issuance of such full RELEASE, Lender may destroy said Note and this Security Instrument (unless directed in such request to retain them).

(12)     That as additional security, Borrower hereby gives to and confers upon Lender the right, power and authority during the continuance of this Security Instrument, to collect the rents, issues and profits of the Property, reserving unto Borrower the right, prior to any default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Lender may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured enter upon and take possession of the Property or any part thereof, in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonable attorneys' fees, upon the indebtedness secured hereby, and in such order as Lender may determine. The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or

Security Instrument - Page 4 of 9
Loan ID:
Property Address: 1569 56th St, Brooklyn, NY 11219

notice of default hereunder or invalidate any act done pursuant to such notice. Without limiting the generality of any of the foregoing, (A) Lender shall have all rights to judicial foreclosure and deficiency judgments in accordance with Article 13 of the New York Real Property Actions and Proceedings Law and (B) without prejudice to the right to bring an action for foreclosure of this Security Instrument, sell or offer to sell, the Property or any part thereof pursuant to any procedures provided by applicable law, including, without limitation, the procedures set forth in Article 14 of the New York Real Property Actions and Proceedings Law (and any amendments or substitute statutes in regard thereto), and all estate, right, title, interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entity or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by applicable law.

(13) That upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, under the Note secured hereby, or under the Loan Agreement, Lender may declare all sums secured hereby immediately due and payable by delivery to Lender of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Lender shall cause to be filed for record.

(14) That this Security Instrument applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including pledges of the note secured hereby whether or not named as Lender herein. In this Security Instrument, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(15) Borrower shall, at Borrower's expense, maintain in force fire and extended coverage insurance in any amount of not less than the full replacement value of any building which may exist on the Property, with loss payable to Lender. Borrower shall provide fire insurance protection on Borrower's furniture, fixtures and personal property on the Property in an amount equal to the full replacement value thereof, and promises that any insurance coverage in this regard will contain a waiver of the insurers' right of subrogation against Lender. In addition, Borrower shall, at Borrower's expense, maintain in force policies of liability insurance and, if applicable, flood insurance, with Lender as loss payee and as an additional insured thereunder, insuring Borrower against all claims resulting from the injury to or the death of any person or the damage to or the destruction of any property belonging to any person by reason of Lender's interest hereunder or the use and occupancy of the Property by Borrower. Such insurance shall be in the following amounts: (1) $1,000,000.00 combined single limit liability insurance covering property damage and bodily injury; and (2) flood insurance in an amount equal to the replacement cost of the Property is required if the collateral is located in a flood zone. At least thirty (30) days prior to the expiration of a policy, Borrower shall deliver to Lender a renewal policy in a form satisfactory to Lender. If Borrower obtains any other insurance on the Property, such insurance shall name the Lender as additional insured and loss payee thereunder.

(16) If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), or a lien or encumbrance is created upon the Property, voluntarily or involuntarily, or if Borrower shall file or have filed against it and/or the Property any proceeding for relief of debtors under the United

States Bankruptcy Code, in each case without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(17)    Lender may make or cause to be made reasonable entries upon and inspections of the Property securing this Security Instrument.

(18)    Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property securing this Security Instrument or any part thereof and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender. Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Security Instrument, whether or not then due, in the order of application set forth in paragraph three (3) hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to Principal (as defined in the Note) shall not extend or postpone the due date of the monthly installments referred to in Section 3 of the Note or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

(19)    This Security Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Security Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Security Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Security Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments

and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. For purposes of filing and recording this Security Instrument in, among other places, the real estate records of the county in which the Property is located, the following information is included: (i) the Borrower shall be deemed the "Debtor" with the address set forth for the Borrower on the first page of this Security Instrument which the Borrower certifies is accurate, (ii) the Lender shall be deemed to be the "Secured Party" with the address set forth for the Lender on the first page of this Security Instrument and shall have all of the rights of a secured party under the Uniform Commercial Code, (iii) this Security Instrument covers goods which are or are to become fixtures, (iv) the name of the record owner of the land is Borrower, (v) if Borrower is an entity, the organizational identification number of Borrower i███████ and the Borrower is organized under the laws of New York. Upon Borrower's breach of any covenant, representation, warranty or agreement of Borrower contained in this Security Instrument, including the covenants to pay when due all sums secured by this Security Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in this Security Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in this Security Instrument.

(20)    Any default under this Security Instrument shall constitute a default under all promissory notes and security instruments Borrower has executed in favor of Lender. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave intentionally or materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's use of the Property solely for business and/or commercial purposes.

(21)    State-Specific Provisions. State specific provisions, if any, are outlined on Exhibit B attached hereto and incorporated herein. In the event of any inconsistencies between the terms and conditions of this Section and any other terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

(22)    Indemnity. The Borrower agrees to indemnify Lender, each legal entity, if any who controls the Lender and each of their respective directors, officers and employees (each an "Indemnified Party", collectively the "Indemnified Parties"), and to hold each Indemnified Party harmless from and against, any and all claims, damages, losses, liabilities and expenses (including all reasonable fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Borrower), in connection with or arising out of the matters referred to in this Security Instrument

Security Instrument - Page 7 of 9
Loan ID: ██████
Property Address: 1569 56th St, Brooklyn, NY 11219

or in the other Loan Documents, whether (a) arising from or incurred in connection with any breach of a representative, warranty or covenant by the Borrower, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's willful misconduct. The indemnity agreement contained in this Section shall survive the termination of this Security Instrument, payment of any Loan and assignment of any rights hereunder.

(23)    Wherever possible, each provision of this Security Instrument shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Security Instrument shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Instrument.

(24)    **WAIVER OF JURY TRIAL.** **THE BORROWER IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS SECURITY INSTRUMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS SECURITY INSTRUMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS.    THE BORROWER ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

[SIGNATURE PAGE FOLLOWS]

Security Instrument - Page 8 of 9
Loan ID:
Property Address: 1569 56th St, Brooklyn, NY 11219

The undersigned Borrower requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him/her at his/her address hereinbefore set forth.

**BORROWER**:

1567 56 NY LLC,
a New York limited liability company

By: _____

Name:   Arthur Spitzer
Title:    Sole Member

Security Instrument – Page 9 of 9
Loan ID: ███████
Property Address: 1569 56th St, Brooklyn, NY 11219

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___New York___ )
                                              ) ss
COUNTY OF ___Rockland___ )

On ___8/27/19___, before me, ___Devorah Reinman___, a Notary Public, personally appeared _____
(Insert name and title exactly as they appear on signature page)
___Arthur Spitzer___,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___New York___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                                                                    (Seal)

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

DEVORAH REINMAN
Notary Public – State of New York
No. 01RE6291295
Qualified in Rockland County
My Commission Expires 10-15-21

Security Instrument
Loan ID: ▮▮▮▮▮▮
Property Address: 1569 56th St, Brooklyn, NY 11219

## EXHIBIT A

### DESCRIPTION OF PROPERTY

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, in the County of Kings, State of NY:

BEGINNING at a point on the northerly side of 56th Street, distant 100 feet westerly from the corner formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th Avenue;

RUNNING THENCE northerly parallel with 16th Avenue 100 feet 2 inches;

THENCE westerly parallel with 56th Street, 20 feet;

THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street;

THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING

FOR INFORMATION PURPOSES ONLY: BEING Tax Lot(s) 49 ,Tax Block 5488 on the Official Tax Map of Borough of Brooklyn, County of Kings, State of New York.

For Information Only:
Said Premise being known as 1569 56 Street, Brooklyn, NY.

District: , Section: , Tax Block: 5488, : LoT 4 9

Exhibit A to Security Instrument - Page 1 of 1
Loan ID: ▇▇▇▇▇▇
Property Address: 1569 56th St, Brooklyn, NY 11219

## EXHIBIT B

## NEW YORK STATE SPECIFIC PROVISIONS

**Section 21.1** Inconsistencies. In the event of any inconsistencies between the terms and conditions of this Section and the terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

**Section 21.2** Agreements about New York Lien Law. Borrower shall receive all amounts lent to it by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that Borrower will (a) hold all amounts received and which it has a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before Borrower shall use them for any other purpose. The fact that Borrower holds those amounts as a trust fund means that for any building or other improvement located on the Property, Borrower is required under the law to use the amount in the manner described in this Security Instrument.

**Section 21.3** Statutory Construction. The clauses and covenants contained in this Security Instrument that are construed by Section 254 of the New York Real Property Law (other than subsection 4 thereof) shall be construed as provided in those sections. The additional clauses and covenants contained in this Security Instrument shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by Section 254 of the New York Real Property Law and shall not impair, modify, alter or defeat such rights (except that the provisions of subparagraph 4 of such Section 254 shall not apply to this Security Instrument), notwithstanding that such additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254. In the event of any inconsistencies between the provisions of Section 254 and the provisions of this Security Instrument, the provisions of this Security Instrument shall prevail.

**Section 21.4** Borrower's Statement Regarding the Property. This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

**Section 21.5** Choice of Law. New York law shall exclusively govern the enforcement and interpretation of this Security Instrument.

Exhibit B to Security Instrument - Page 1 of 1
Loan ID: 
Property Address: 1569 56th St, Brooklyn, NY 11219

Exhibit C

ALLONGE

This Allonge is affixed to, and is hereby made a part of, that certain Note, dated August 27, 2019, in the original principal amount of $1,200,000.00 ("Note"), made by 1567 56 NY LLC, a New York limited liability company, for the benefit of ROSA FUNDING LLC, a New Jersey limited liability company ("Assignor"), and evidences the endorsement of the Note by Assignor as provided in that certain Master Loan Sale Agreement, dated February 22, 2018, by and between Assignor and the endorsee hereon ("Agreement"), to wit:

The Note is hereby made PAYABLE TO THE ORDER OF PS FUNDING, INC., a Delaware corporation, at 2121 Park Place, Suite #250, El Segundo, CA 90245, without recourse subject to the Agreement.

Dated: August 27, 2019

ASSIGNOR:

ROSA FUNDING LLC,
a New Jersey limited liability company

By: _____
Name: _Joel Wreschel_
Title: _Manager_

PS ID ██████
Property Address: 1569 56th St, Brooklyn, NY 11219

# Exhibit D



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2019092300146003001E6594

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 5 |
|---|---|---|
| **Document ID:** 2019092300146003 | Document Date: 08-27-2019 | Preparation Date: 09-23-2019 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 4

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| DEKEL ABSTRACT LLC<br>485 OAK GLEN ROAD<br>HOWELL, NJ 07731<br>732-813-3560<br>INFO@DEKELABSTRACT.COM | DEKEL ABSTRACT LLC<br>485 OAK GLEN ROAD<br>HOWELL, NJ 07731<br>732-813-3560<br>INFO@DEKELABSTRACT.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5488 | 49 | Entire Lot | 1569 56TH STREET |

Property Type: DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

**Document ID:** 2019092300146002

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| ROSA FUNDING LLC<br>209 2NS ST<br>LAKEWOOD, NJ 08701 | PS FUNDING, INC.<br>2121 PARK PLACE<br>EL SEGUNDO, CA 90245 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 09-23-2019 12:46 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 57.00 | 2019000306605 | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M. Hill*
**City Register Official Signature**

RECORDING REQUESTED & PREPARED BY:

PS Funding, Inc.
Kayley Kim, Esq.
2121 Park Place, Suite 250
El Segundo, CA 90245

WHEN RECORDED RETURN TO:

PS Funding, Inc.
2121 Park Place, Suite 250
El Segundo, CA 90245
Attn: Closing Department

Block 5488 Lot 49
Property Address: 1569 56th St, Brooklyn, NY 11219

---

## ASSIGNMENT OF MORTGAGE

This ASSIGNMENT OF MORTGAGE ("Assignment") is made by ROSA FUNDING LLC, a New Jersey limited liability company, whose address is 209 2nd St, Lakewood, NJ 08701 ("Assignor"), to PS FUNDING, INC., a Delaware corporation, whose address is 2121 Park Place, Suite 250, El Segundo, CA 90245 ("Assignee").

FOR VALUE RECEIVED, Assignor hereby sells, grants, assigns, and transfers to Assignee any and all of its right, title and interest in and to that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated August 27, 2019, in the original principal amount of $1,200,000.00, made by 1567 56 NY LLC, a New York limited liability company, for the benefit of Assignor ("Security Instrument"), and recorded concurrently herewith in the Official Records of Kings County, NY, and as a lien on that certain real property described on Exhibit A, attached hereto and made a part hereof.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under the foregoing Security Instrument.

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property law because it is an assignment within the secondary mortgage market (§ 275(3)).

[SIGNATURE PAGE FOLLOWS]

1

PS ID ▮▮▮▮▮▮
Property Address: 1569 56th St, Brooklyn, NY 11219

IN WITNESS WHEREOF, this Assignment is made to be effective as of the date written below.

Dated: August 27, 2019

ASSIGNOR:

ROSA FUNDING LLC,
a New Jersey limited liability company

By:

Name: _Tosl Weinfeld_

Title: _Member_

PS ID ████

Property Address: 1569 56th St, Brooklyn, NY 11219

EXHIBIT A TO
ASSIGNMENT OF MORTGAGE
LEGAL DESCRIPTION OF PROPERTY

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, in the County of Kings, State of NY:

BEGINNING at a point on the northerly side of 56th Street, distant 100 feet westerly from the corner formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th Avenue;

RUNNING THENCE northerly parallel with 16th Avenue 100 feet 2 inches;

THENCE westerly parallel with 56th Street, 20 feet;

THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street;

THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING

FOR INFORMATION PURPOSES ONLY: BEING Tax Lot(s) 49 ,Tax Block 5488 on the Official Tax Map of Borough of Brooklyn, County of Kings, State of New York.

For Information Only:
Said Premise being known as 1569 56 Street, Brooklyn, NY.

District: , Section: , Tax Block: 5488, : LOT 49

4

PS ID ██████
Property Address: 1569 56th St, Brooklyn, NY 11219

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___NJ___ )

) ss

COUNTY OF ___Munmouth___ )

On __8/27/19__ , before me, __Abraham Teitelbaum__ , a Notary Public, personally appeared __Josh Weinfeld - Member__

(Insert name and title exactly as they appear on signature page)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___NJ___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

(Seal)

ABRAHAM TEITELBAUM
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JUNE 11, 2024

3

PS ID ████████
Property Address: 1569 56th St, Brooklyn, NY 11219

Case 1:23-cv-08887-DEH   Document 6-26   Filed 10/26/23   Page 73 of 135

# Exhibit E

# GUARANTY

## PROPERTY ADDRESS: 1569 56th St, Brooklyn, NY 11219

This GUARANTY dated as of August 27, 2019 (this "Guaranty"), is made by ARTHUR SPITZER, an individual resident of New York ("Guarantor"), in favor of ROSA FUNDING LLC, a New Jersey limited liability company, as lender under the Note (as defined below) (together with its successors and assigns, collectively, "Lender").

## W I T N E S S E T H:

WHEREAS, Lender is making a loan to 1567 56 NY LLC, a New York limited liability company (the **"Borrower"**) in the original principal amount of One Million Two Hundred Thousand and 0/100 Dollars ($1,200,000.00) (the "Loan") as evidenced by (i) that certain promissory note dated the date hereof, executed by Borrower and made payable to the order of Lender in the amount of the Loan (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note") and (ii) that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated the date hereof, by Borrower in favor of Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Security Instrument"). The Note and the Security Instrument, together with all riders thereto and related certificates and ancillary documents, are collectively referred to herein as the "Loan Documents".

WHEREAS, pursuant to the Security Instrument, Borrower's obligations under the Loan Documents will be secured by, among other things, the real property described in the Security Instrument (collectively, the "Property").

WHEREAS, Guarantor is a direct or indirect owner of an equity interest in Borrower, and accordingly will derive material direct and indirect financial and other benefits from the transactions contemplated by the Note and the other Loan Documents.

WHEREAS, to induce Lender to make the Loan, Guarantor has agreed to execute and deliver this Guaranty.

NOW, THEREFORE, in consideration of the covenants set forth in this Guaranty, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree, represent and warrant as follows:

## ARTICLE 1

## NATURE AND SCOPE OF GUARANTY

Section 1.1      Guaranty of Obligation. Guarantor hereby irrevocably and unconditionally guarantees the due and prompt payment and performance in full when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of the following (the "Guaranteed Obligations"):

(a) the principal of, interest on, and all other amounts due at any time under the Note or any other Loan Document, including prepayment penalties, late payment charges, interest charged at the default rate (if applicable), and accrued interest as provided in the Loan Documents (including interest that may accrue during the pendency of any proceeding under Bankruptcy Laws as described below), advances, costs and expenses to perform the obligations of Borrower or to protect the Property or the security of the Security Instrument;

(b) all other covenants, agreements, liabilities, obligations (including indemnity obligations and any other monetary obligations) of Borrower under the Loan Documents; and

(c) all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any default under the Loan Documents or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding or any judicial or non-judicial foreclosure proceeding or other exercise by Lender of its rights and remedies under any Loan Document or any transfer in lieu of foreclosure (a "Foreclosure Event"), including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event, to the extent permitted by law.

Without limiting the generality of the foregoing, Guarantor's liability shall extend to all amounts that constitute part of the Guaranteed Obligations and would be owed by Borrower to Lender under the Loan Documents but for the fact that they are unenforceable or not allowable due to the existence of a proceeding under Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as the same may be amended from time to time, and any successor statute or statutes and all rules and regulations from time to time promulgated thereunder, and any comparable foreign laws relating to bankruptcy, insolvency or creditors' rights or any other Federal or state bankruptcy or insolvency law (collectively, "Bankruptcy Laws").

Section 1.2  Nature of Guaranty.  Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.  This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance and not merely a guaranty of collection.  This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor.  If Guarantor is a married person, and the state of residence of Guarantor or Guarantor's spouse is a community property jurisdiction, Guarantor agrees that Lender may satisfy Guarantor's obligations under this Guaranty to the extent of all of Guarantor's separate property and Guarantor's interest in any community property.

Section 1.3  Survival of Guaranty.  This Guaranty is a continuing guaranty and shall remain in full force and effect until the repayment and performance in full of the Guaranteed Obligations (subject to Section 1.8).  The obligations of Guarantor under this Guaranty shall survive any Foreclosure Event, and any release or reconveyance of the Security Instrument or any release of any other security or guaranty for the Loan.

Section 1.4    Obligations Unsecured.  The obligations of Guarantor under this Guaranty shall not be secured by the Security Instrument or the other Loan Documents and shall not be obligations of Borrower notwithstanding anything to the contrary in any other Loan Document.

Section 1.5    Payment by Guarantor.  If all or any part of the Guaranteed Obligations is or shall give rise to a monetary obligation, and such monetary obligation shall not be punctually paid when due, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth in such demand.  Such demand(s) may be made at any time coincident with or after the time for payment of the Guaranteed Obligations.

Section 1.6    No Duty to Pursue Others.  It shall not be necessary for Lender (and Guarantor hereby waives any rights which it may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (a) make any demand upon or institute suit or exhaust its remedies against Borrower or others liable for amounts due under the Guaranteed Obligations or any other person or entity, (b) institute suit or exhaust its remedies with respect to the Guaranteed Obligations or any person or entity, (c) enforce Lender's rights against any collateral which shall ever have been given to secure any of the Guaranteed Obligations, (d) enforce Lender's rights against any other guarantor of the Guaranteed Obligations, (e) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty or (f) resort to any other means of obtaining payment of the Guaranteed Obligations.  Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

Section 1.7    Payment of Expenses.  Guarantor shall, immediately upon demand by Lender, pay all reasonable costs and out-of-pocket expenses (including court costs and attorneys' fees, disbursements, costs and expenses) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder and any and all damages, losses, claims, liabilities and related reasonable costs and out-of-pocket expenses, including court costs and attorneys' fees, disbursements, costs and expenses incurred by Lender arising from any breach or failure to timely perform any provisions of this Guaranty by Guarantor.

Section 1.8    Reinstatement.  In the event that, pursuant to any controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions (collectively, "Applicable Law"), including any Bankruptcy Law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations (including pursuant to any settlement entered into by Lender in its discretion), or if Lender elects to do so upon the advice of its counsel, then all obligations under this Guaranty in respect of such payment shall automatically be reinstated as though such payment had been due but not made and shall remain in full force and effect and any prior release or discharge from the terms of this Guaranty given to Guarantor shall be without effect.  It is the intention of Lender and Guarantor that Guarantor's obligations hereunder shall not be discharged except by its performance of such obligations and then only to the extent of such performance.

## ARTICLE 2

## EVENTS AND CIRCUMSTANCES NOT REDUCING OR DISCHARGING GUARANTOR'S OBLIGATIONS

Section 2.1    Events and Circumstances.  Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including rights to notice) that Guarantor might otherwise have as a result of or in connection with any of the following:

(a)    Modifications.  Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Loan Documents, or any other document, instrument, contract or understanding between Borrower or Guarantor and Lender, or any other person or entity, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

(b)    Adjustment.  Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or Guarantor.

(c)    Financial Condition.  The commencement, filing or continuation of any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshaling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other person or entity, or any of their respective property or creditors or any action taken by any trustee or receiver or by any court in such proceeding; or the making of a general assignment for the benefit of creditors by Borrower, Guarantor or any other person or entity; or any sale, lease or transfer of any or all of the assets of Borrower, Guarantor or any other person or entity.

(d)    Invalidity of Guaranteed Obligations.  The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including the fact that (a) the Guaranteed Obligations, or any part thereof, exceeds the amount permitted by law, (b) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (c) the officers or representatives executing the Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (d) the Guaranteed Obligations violate applicable usury laws, (e) Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially unenforceable or uncollectible from Borrower, other than payment and performance in full of the Guaranteed Obligations, (f) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or that was executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (g) the Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed

that Guarantor shall remain liable hereon regardless of whether Borrower or any other person or entity be found not liable on the Guaranteed Obligations or any part thereof for any reason.

(e)    <u>Release of Liability</u>.  Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other person or entity now or hereafter liable therefor, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being acknowledged and agreed by Guarantor that (a) Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of Borrower or any other person or entity and (b) Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that any other person or entity will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to any other person or entity to pay or perform the Guaranteed Obligations.

(f)    <u>Other Collateral</u>.  The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

(g)    <u>Release of Collateral</u>.  Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations, or any failure to perfect a lien in any collateral.

(h)    <u>Care and Diligence</u>.  The failure of Lender or any other person or entity to exercise diligence or reasonable care in the enforcement of its rights under the Loan Documents or the preservation, protection, enforcement, sale or other handling or treatment of all or any part of any collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the enforcement or collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

(i)    <u>Unenforceability</u>.  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being acknowledged and agreed by Guarantor that it is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations or the priority of any security interest or lien therein.

(j)    <u>Offset</u>.  Any existing or future offset, claim or defense of Borrower, Guarantor or any other person or entity, against Lender, Borrower or any other person or entity or against payment or performance of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed

Obligations) or otherwise, other than the payment and performance of the Guaranteed Obligations in full.

(k)  **Compliance with Loan Documents**.  Any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the Guaranteed Obligations or Lender to conform or comply with any term of any of the Loan Documents.

(l)  **Corporate Events**.  The reorganization, merger or consolidation of Borrower into or with any other person or entity; or any dissolution of Borrower or any other entity; or any changes in the shareholders, partners or members of Borrower or any other person or entity; or any reorganization of Borrower or any other person or entity; or any other change in the relationship between Borrower, Guarantor or any other guarantor of the Guaranteed Obligations, or any termination of such relationship.

(m)  **Preference**.  Any payment by Guarantor to Lender that is held to constitute a preference under Bankruptcy Laws, or for any reason Lender is required to refund such payment or pay such amount to any other person or entity.

(n)  **Other Actions Taken or Omitted**.  Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or any other person or entity or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof.

It is the unambiguous and unequivocal intention of Guarantor that it shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or not contemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and performance of the Guaranteed Obligations.

## ARTICLE 3

## GUARANTOR WAIVERS

Section 3.1  **Waiver of Applicable Laws**.  Guarantor hereby irrevocably waives the benefit of all principles and provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances, whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor) and the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors.

Section 3.2  **Waiver of Notice**.  Guarantor hereby waives all notices with respect to the Loan Documents and this Guaranty that may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including notice of (a) any loan or other indebtedness of Borrower, (b) acceptance of this Guaranty, (c) the execution and delivery

by Borrower of any documents or instruments relating to the Loan or in connection with the Property or any collateral, (d) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (e) the occurrence of any default under the Loan Documents, (f) dishonor, (g) notice of intent to accelerate, notice of acceleration, (h) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral under the Loan Documents, (i) protest, proof of non-payment or default by Borrower or any other guarantor of the Guaranteed Obligations and (j) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty or the other Loan Documents.

Section 3.3    Changes in the Guaranteed Obligations.  At any time or from time to time and any number of times, without notice to Guarantor and without releasing, discharging or affecting the liability of Guarantor hereunder: (a) the time for payment of the principal of, interest on or other amounts payable under the Loan may be extended or the Loan may be renewed in whole or in part; (b) the rate of interest on or period of amortization of the Loan or the amount of the monthly principal payments payable under the Loan Documents may be modified; (c) the time for Borrower's performance of or compliance with any covenant or agreement contained in any Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived; (d) the maturity of the Loan may be accelerated as provided in the Loan Documents; (e) any or all payments due under the Loan Documents may be reduced; (f) any Loan Document may be modified or amended by Lender and Borrower in any respect, including an increase in the principal amount of the Loan; (g) any amounts held under the Loan Documents may be released; (h) the payment of the principal of, interest on or other amounts payable under Loan or any security for the Loan, or both, may be subordinated to the right to payment or the security, or both, of any other present or future creditor of Borrower; (i) any payments made by Borrower to Lender may be applied to the principal of, interest on or other amounts payable under the Loan in such order and priority as Lender determines; (j) Lender may foreclose on any collateral securing the Loan by one or more judicial or non-judicial sales, accept an assignment of any such collateral in lieu of foreclosure; and (k) any other terms of the Loan Documents may be modified as required by Lender.

## ARTICLE 4

## REPRESENTATIONS AND WARRANTIES

Section 4.1    Representations and Warranties.  To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as of the date hereof as follows:

(a)    This Guaranty constitutes a legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with its terms, subject only to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(b)    The execution, delivery and performance of this Guaranty by Guarantor (i) will not result in any violation of the provisions of any Applicable Laws, (ii) will not conflict with or result

in a breach of any of the terms or provisions of, or constitute a default under the terms of any indenture, mortgage, deed of trust, deed to secure debt, loan agreement, management agreement or other agreement or instrument to which Guarantor is a party or to which any of Guarantor's property or assets is subject, and (iii) will not result in or require the creation or imposition of any lien upon or with respect to any of the assets of Guarantor.

(c)      Any consent, approval, authorization, order, registration or qualification of or with a governmental authority or other person or entity required for the execution, delivery and performance by Guarantor of this Guaranty has been obtained and is in full force and effect.

(d)      Guarantor is an affiliate of Borrower, is the owner of a direct or indirect equity interest in Borrower, and has received, or will receive, direct and indirect material financial and other benefits from the making of this Guaranty.

(e)      Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Guaranteed Obligations; provided, however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

(f)      Neither Lender nor any of its representatives has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty and Guarantor has not relied on Lender for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Guaranty or any other Loan Document or otherwise relied on Lender in any manner in connection with interpreting, entering into or otherwise in connection with this Guaranty, any other Loan Document or any of the matters contemplated hereby or thereby.

(g)      Guarantor has received a copy of each of the Loan Documents and this Guaranty. Guarantor has read this Guaranty and each of the other Loan Documents and understands the nature and structure of the transactions contemplated by this Guaranty and the other Loan Documents. Guarantor understands the risks inherent in such transactions, including the risk of loss of all or any part of the Property or of the assets of Guarantor. Guarantor has had the opportunity to consult with its legal counsel prior to entering into the Guaranty and Guarantor availed himself or herself of such opportunity to the extent he or she desired.

(h)      There are no actions, suits or proceedings at law or in equity by or before any governmental authority, arbitrator or other entity now pending or, to Guarantor's knowledge, threatened against or affecting Guarantor.

(i)      Guarantor has (i) not entered into the transaction contemplated by this Guaranty with the actual intent to hinder, delay or defraud any creditor and (ii) received reasonably equivalent value in exchange for its obligations under this Guaranty. After giving effect to this Guaranty, (x) the fair saleable value of Guarantor's assets will exceed its total liabilities, (y) Guarantor's assets will not constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted and (z) Guarantor will be able to pay its liabilities as

they mature. In the last ten years, Guarantor has not been the subject of or a party to any pending bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation (each, an "Event of Bankruptcy"). Guarantor is not contemplating an Event of Bankruptcy and to Guarantor's knowledge no other person or entity is contemplating an Event of Bankruptcy in respect of Guarantor.

## ARTICLE 5

## AGREEMENT TO PAY, SUBROGATION AND SUBORDINATION

Section 5.1    Subordination of All Guarantor Claims.

(a)    Without limiting any other right that Lender has at law or in equity against Guarantor, if Borrower fails to pay any Guaranteed Obligation when and as due, whether at maturity, by acceleration, after notice of prepayment or otherwise, Guarantor agrees to promptly pay the amount of such unpaid Guaranteed Obligations to Lender in cash. Upon payment by Guarantor of any sums to Lender as provided herein, all of Guarantor's rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against Borrower with respect to such sum shall be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all monetary Guaranteed Obligations. If any payment shall be paid to Guarantor in violation of the immediately preceding sentence on account of such subrogation, exoneration, contribution, reimbursement, indemnity or similar right, such amount shall be held in trust for the benefit of Lender, segregated from other funds of Guarantor, and promptly paid or delivered to Lender in the same form as so received (with any necessary endorsement or assignment) to be credited against the payment of the Guaranteed Obligations, whether due or to become due, in accordance with the terms of the Loan Documents or to be held as collateral for the Guaranteed Obligations.

(b)    Guarantor hereby subordinates any and all debts, liabilities and obligations owed to it by Borrower (including all rights and claims of Guarantor against Borrower as a result of Guarantor's payment of all or part of the Guaranteed Obligations) (the "Subordinated Obligations") to the Guaranteed Obligations as follows:

(i)    Guarantor shall not accept, demand or take any action to collect any payment on the Subordinated Obligations without the prior written consent of Lender.

(ii)    Guarantor agrees that Lender shall be entitled to receive full payment in cash of all Guaranteed Obligations (including interest accruing during the pendency of any proceeding under Bankruptcy Laws, regardless of whether allowed or allowable in such proceeding ("Post-Petition Interest")) in any proceeding under Bankruptcy Laws against Borrower before Guarantor receives any payment on account of any Subordinated Obligations.

(iii)    After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Guarantor shall collect, enforce and receive payments on the Subordinated Obligations as trustee for Lender and deliver such payments to Lender on account

of the Guaranteed Obligations (including Post-Petition Interest), together with any necessary endorsements or other instruments of transfer, without reducing or affecting the liability of Guarantor under this Guaranty in any respect.

(iv)    After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Lender is authorized and empowered (but not obligated), in its discretion, (x) in the name of Guarantor, to collect and enforce, and to submit claims in respect of, Subordinated Obligations and to apply any amount so received to the Guaranteed Obligations (including Post-Petition Interest), and (y) to require Guarantor (A) to collect and enforce and to submit claims in respect of, Subordinated Obligations and (B) to pay any amounts received on such obligations to Lender for application to the Guaranteed Obligations (including Post-Petition Interest).

Section 5.2    Payments Held in Trust.  In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payments, claims and/or distributions which are prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims and/or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

Section 5.3    Liens Subordinate.  Guarantor agrees that no liens, security interests, judgment liens, charges or other encumbrances shall exist upon Borrower's assets securing payment of the Subordinated Obligations and any such liens, security interests, judgment liens, charges or other encumbrances which may exist shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach.  Without the prior written consent of Lender, Guarantor shall not (a) exercise or enforce any creditor's right it may have against Borrower, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including the commencement of, or joinder in, any proceeding under Bankruptcy Laws) to enforce any liens, mortgages, deeds of trust, deeds to secure debt, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

## ARTICLE 6

## MISCELLANEOUS

Section 6.1    Waiver; Amendment.  No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right.  The rights of Lender hereunder shall be in addition to all other rights provided by law.  No modification, amendment, extension, discharge, termination or waiver of any provision of this Guaranty, nor consent to any departure by Guarantor or Lender therefrom, shall in any event be

effective unless the same shall be in a writing signed by the party or parties against whom enforcement is sought, and then any such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 6.2    Notices. All notices given by Guarantor or Lender in connection with this Guaranty must be in writing. Any notice to Guarantor in connection with this Guaranty shall be deemed to have been given to Guarantor when mailed by first class mail or when actually delivered to Guarantor's notice address if sent by other means. Guarantor's notice address shall be the address set forth on the signature page hereto unless Guarantor has designated a substitute notice address by notice to Lender. Guarantor shall promptly notify Lender of Guarantor's change of address. If Lender specifies a procedure for reporting Guarantor's change of address, then Guarantor shall only report a change of address through that specified procedure. There may be only one designated notice address under this Guaranty at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated in the Definitions Section of the Note unless Lender has designated another address by notice to Guarantor. Any notice in connection with this Guaranty shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Guaranty is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Guaranty.

Section 6.3    Governing Law. This Guaranty shall be governed by federal law and the law of New York without regard to the application of choice of law principles that would result in the application of the laws of another jurisdiction.

Section 6.4    Venue. Guarantor agrees that any controversy arising under or in relation to this Guaranty shall be litigated exclusively in New York. The state and federal courts and authorities with jurisdiction in New York shall have exclusive jurisdiction over all controversies that arise under or in relation to this Guaranty or any other Loan Document with respect to the subject matter hereof. Guarantor irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

Section 6.5    WAIVER OF JURY TRIAL. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS GUARANTY OR ANY LOAN DOCUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY GUARANTOR, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

Section 6.6    Severability. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid pursuant to Applicable Law, but if any

provision of this Guaranty shall be prohibited by or invalid pursuant to Applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

Section 6.7   Prior Agreements.   THIS GUARANTY REPRESENTS THE FINAL AGREEMENT OF GUARANTOR WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS.   THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.   All prior or contemporaneous agreements, understandings, representations and statements, oral or written, relating to the subject matter hereof are superseded by this Guaranty.

Section 6.8   Defined Terms; Construction.

(a)   Capitalized terms used herein without definition shall have the meanings ascribed thereto in the other Loan Documents.

(b)   Any reference in this Guaranty to a "Section" shall, unless otherwise explicitly provided, be construed as referring to a Section of this Guaranty.

(c)   The Article and Section headings in this Guaranty are included herein for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose.

(d)   Any reference in this Guaranty to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(e)   Use of the singular in this Guaranty includes the plural and use of the plural includes the singular.

(f)   As used in this Guaranty, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(g)   Whenever Guarantor's knowledge is implicated in this Guaranty or the phrase "to Guarantor's knowledge" or a similar phrase is used in this Guaranty, Guarantor's knowledge or such phrase(s) shall be interpreted to mean to the best of Guarantor's knowledge after reasonable and diligent inquiry and investigation.

(h)   Unless otherwise provided in this Guaranty, if Lender's approval, consent, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, consent, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(i)   All references in this Guaranty to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(j)     The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

Section 6.9     Recitals.  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

Section 6.10   Rights and Remedies.  If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

Section 6.11   Taxes.  Any payments by or on account of any obligation of Guarantor under this Guaranty shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with Applicable Law and the sum payable hereunder shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Lender.  Guarantor shall promptly indemnify Lender for all such non-excluded taxes (including interest and additions to tax) and related expenses.  Guarantor shall promptly deliver evidence satisfactory to Lender of any payments made pursuant to this Section 6.11.

Section 6.12   Assignment.  Lender may assign its rights under this Guaranty in whole or in part and, upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of and may be enforced by such assignee to the extent so assigned.  Guarantor may not assign its rights, duties and obligations under this Guaranty, in whole or in part, without Lender's prior written consent, and any such assignment shall be deemed void ab initio.  The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties.

Section 6.13   Time is of the Essence.  Guarantor agrees that, with respect to each and every obligation and covenant contained in this Guaranty, time is of the essence.

Section 6.14   Credit Report.  Guarantor acknowledges and agrees that Lender is authorized, no more frequently than once in any twelve (12) month period, to obtain a credit report (if applicable) on Guarantor, the cost of which shall be paid for by Guarantor.  Guarantor acknowledges and agrees that Lender is authorized to obtain a credit score (if applicable) for Guarantor at any time at Lender's expense.

Section 6.15   <u>State-Specific Provisions</u>.  Not applicable.

Section 6.16   <u>Community Property Provision</u>.  Not applicable.

The parties executing this Guaranty intend to create an instrument executed under seal.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Guarantor has signed and delivered this Guaranty as of the date first written above, under seal (where applicable).  Where Applicable Law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

GUARANTOR:

_____ (SEAL)
ARTHUR SPITZER

Address for Notices to Guarantor:
123 Ave I
Brooklyn, NY 11230

Guarantor represents and warrants that
Guarantor is:

[____] single
[X] married
[____] an entity

Guarantor represents and warrants that
Guarantor is a resident of New York.

Case 1:23-cv-08887-DEH   Document 6-26   Filed 10/26/23   Page 89 of 135

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------------X

PS FUNDING, INC.,

               Plaintiff,

        Against

1567 56 NY LLC, ARTHUR SPITZER, and
JANE/JOHN DOE Nos. 1-12

               Defendants,
--------------------------------------------------------------------X

**Index No.**

**CERTIFICATE OF MERIT**
**PURSUANT TO CPLR 3012-b**

Mortgaged Premises:
1569 56th St., Brooklyn, NY 11219

1.     I, Charles J. Barreras, am an attorney at law duly licensed to practice in the State of New York, and am affiliated with the law firm of Chartwell Law, attorney for plaintiff, **PS Funding, Inc.**, in this action.

2.     This foreclosure action does not involve a home loan, as such term is defined in the Real Property Actions and Proceedings Law, § 1304.  Upon information and belief, other than unknown tenants, Jane/John Doe Nos. 1-12, none of the Defendants resides in the property subject to foreclosure.

3.     I have reviewed the facts of this case and reviewed pertinent documents, including the mortgage, security agreement and note or bond underlying the mortgage executed by defendant, all instruments of assignment (if any), and all other instruments of indebtedness including any modification, extension, and consolidation.

4.     I have consulted about the facts of this case with the following representatives of plaintiff:

**Name:**
Hugh Humphreys

**Title:**
Director, Asset Management

_____     _____
_____     _____
_____     _____

5.     Upon this review and consultation, to the best of my knowledge, information, and belief, I certify that there is a reasonable basis for the commencement of this action, and plaintiff is the creditor entitled to enforce rights under these documents.

6.     Listed in Exhibit A and attached hereto are copies of the following documents not otherwise included as attachments to the summons and complaint, the mortgage, security agreement and note or bond underlying the mortgage executed by the defendant; all instruments of assignment (if any); and any other instrument of indebtedness, including any modification, extension or consolidation.  (Check box if no documents are attached

1

Case 1:23-cv-08887-DEH Document 6-26 Filed 10/26/23 Page 90 of 135

in Exhibit A: X)

7. Listed in Exhibit B and attached hereto are supplemental affidavits attesting that certain documents as described in paragraph 5 <u>supra</u> are lost, whether by destruction, theft or otherwise. (Check box if <u>no</u> documents are attached in Exhibit B: X)

8. I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130.

Dated: February 18, 2021

**CHARTWELL LAW**

By: _____
Charles J. Barreras, Esq.
*Attorneys for Plaintiff*
*PS FUNDING, INC.*
One Battery Park Plaza, Suite 701
New York, NY 10004-1445
Telephone: (212) 968-2300
Facsimile: (212) 968-2400

2

Case 1:23-cv-08887-DEH   Document 6-26   Filed 10/26/23   Page 91 of 135

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------X

PS FUNDING, INC.,                                    **Index No.**

                    Plaintiff,                        **AFFIRMATION OF**
                                                      **COUNSEL**

          Against

1567 56 NY LLC, ARTHUR SPITZER, and                  Mortgaged Premises:
JANE/JOHN DOE Nos. 1-12                               1569 56th St., Brooklyn, NY 11219

                    Defendants,
-------------------------------------------------------------------X

State of New York          :
County of New York         : ss
City of New York           :

          Charles J. Barreras, pursuant to CPLR § 2106 and under the penalties of perjury, affirms
as follows:

1.        I am an attorney duly licensed to practice law in the State of New York and am affiliated
          with the law firm of Chartwell Law, the attorneys of record for Plaintiff in the above-
          captioned mortgage foreclosure action.  As such, I am fully aware of the underlying
          action, as well as the proceedings had herein.

2.        On December 15, 2020, I personally communicated that date with the following
          representative or representatives of Plaintiff, who informed us that he/she/they (a)
          personally reviewed plaintiff's documents and records relating to this case for factual
          accuracy; and (b) confirmed the factual accuracy of the allegations set forth in the
          Complaint and any supporting affidavits or affirmations filed with the Court, as well as
          the accuracy of notarizations contained in the supporting documents filed therewith,

          Name:                                      Title
          Hugh Humphreys                             Director, Asset Management
          _____               _____

3.        Based upon my communication with the person/s specified in paragraph 2, above, as well
          as upon my own inspection and other reasonable inquiry under the circumstances, I
          affirm that, to the best of my knowledge, information and belief, the Summons,
          Complaint, and other papers filed with or submitted to the Court in this matter contain no
          false statements of fact or law.  I understand my continuing obligation to amend this
          Affirmation in light of newly discovered material facts following its filing.

1

4.      I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130.

Dated: February 18, 2021

**CHARTWELL LAW**

By: _____
Charles J. Barreras, Esq.
*Attorneys for Plaintiff*
*PS FUNDING, INC.*
One Battery Park Plaza, Suite 701
New York, NY 10004-1445
Telephone: (212) 968-2300
Facsimile: (212) 968-2400

Exhibit D

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2019092300146003001E6594

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
|---|---|

**Document ID:** 2019092300146003    Document Date: 08-27-2019    Preparation Date: 09-23-2019
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 4

| PRESENTER: | RETURN TO: |
|---|---|
| DEKEL ABSTRACT LLC | DEKEL ABSTRACT LLC |
| 485 OAK GLEN ROAD | 485 OAK GLEN ROAD |
| HOWELL, NJ 07731 | HOWELL, NJ 07731 |
| 732-813-3560 | 732-813-3560 |
| INFO@DEKELABSTRACT.COM | INFO@DEKELABSTRACT.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 5488 | 49 | Entire Lot | 1569 56TH STREET |

Property Type: DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

**Document ID:** 2019092300146002

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| ROSA FUNDING LLC | PS FUNDING, INC. |
| 209 2NS ST | 2121 PARK PLACE |
| LAKEWOOD, NJ 08701 | EL SEGUNDO, CA 90245 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 57.00 | |
| Affidavit Fee: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        09-23-2019 12:46
City Register File No.(CRFN):
                            2019000306605

*Annette M Hill*

***City Register Official Signature***

RECORDING REQUESTED & PREPARED BY:

PS Funding, Inc.
Kayley Kim, Esq.
2121 Park Place, Suite 250
El Segundo, CA 90245

WHEN RECORDED RETURN TO:

PS Funding, Inc.
2121 Park Place, Suite 250
El Segundo, CA 90245
Attn: Closing Department

Block 5488 Lot 49
Property Address: 1569 56th St, Brooklyn, NY 11219

---

## ASSIGNMENT OF MORTGAGE

This ASSIGNMENT OF MORTGAGE ("Assignment") is made by ROSA FUNDING LLC, a New Jersey limited liability company, whose address is 209 2nd St, Lakewood, NJ 08701 ("Assignor"), to PS FUNDING, INC., a Delaware corporation, whose address is 2121 Park Place, Suite 250, El Segundo, CA 90245 ("Assignee").

FOR VALUE RECEIVED, Assignor hereby sells, grants, assigns, and transfers to Assignee any and all of its right, title and interest in and to that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated August 27, 2019, in the original principal amount of $1,200,000.00, made by 1567 56 NY LLC, a New York limited liability company, for the benefit of Assignor ("Security Instrument"), and recorded concurrently herewith in the Official Records of Kings County, NY, and as a lien on that certain real property described on Exhibit A, attached hereto and made a part hereof.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under the foregoing Security Instrument.

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property law because it is an assignment within the secondary mortgage market (§ 275(3)).

[SIGNATURE PAGE FOLLOWS]

1

IN WITNESS WHEREOF, this Assignment is made to be effective as of the date written below.

Dated: August 27, 2019

ASSIGNOR:

ROSA FUNDING LLC,
a New Jersey limited liability company

By: _____

Name: _Tosi Weinfeld_

Title: _member_

2

EXHIBIT A TO
ASSIGNMENT OF MORTGAGE
LEGAL DESCRIPTION OF PROPERTY

ALL that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, in the County of Kings, State of NY:

BEGINNING at a point on the northerly side of 56th Street, distant 100 feet westerly from the corner formed by the intersection of the northerly side of 56th Street, with the westerly side of 16th Avenue;

RUNNING THENCE northerly parallel with 16th Avenue 100 feet 2 inches;

THENCE westerly parallel with 56th Street, 20 feet;

THENCE southerly parallel with 16th Avenue and part of the distance through a party wall 100 feet 2 inches to the northerly side of 56th Street;

THENCE easterly along the northerly side of 56th Street, 20 feet to the point or place of BEGINNING

FOR INFORMATION PURPOSES ONLY: BEING Tax Lot(s) 49 ,Tax Block 5488 on the Official Tax Map of Borough of Brooklyn, County of Kings, State of New York.

For Information Only:
Said Premise being known as 1569 56 Street, Brooklyn, NY.

District: , Section: , Tax Block: 5488, : LOT 49

4

PS ID ▮▮▮▮▮▮
Property Address: 1569 56th St, Brooklyn, NY 11219

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___*NJ*___                       )
                                          ) ss
COUNTY OF ___*Monmouth*___                )


On ___*8/27/19*___, before me, ___*Abraham Teitelbaum*___, a Notary Public,
personally appeared ___*Josh Weinfeld - Member*___
<span>(Insert name and title exactly as they appear on signature page)</span>
_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___*NJ*___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                                                   (Seal)


```
ABRAHAM TEITELBAUM
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JUNE 11, 2024
```

3

PS ID ▮▮▮▮▮▮
Property Address: 1569 56th St, Brooklyn, NY 11219

Exhibit E

## GUARANTY

### PROPERTY ADDRESS:  1567 56 Street, Brooklyn, NY 11219

This GUARANTY dated as of August 27, 2019 (this "Guaranty"), is made by ARTHUR SPITZER, an individual resident of New York ("Guarantor"), in favor of ROSA FUNDING LLC, a New Jersey limited liability company, as lender under the Note (as defined below) (together with its successors and assigns, collectively, "Lender").

### WITNESSETH:

WHEREAS, Lender is making a loan to 1567 56 NY LLC, a New York limited liability company (the **"Borrower"**) in the original principal amount of One Million Two Hundred Thousand and 0/100 Dollars ($1,200,000.00) (the "Loan") as evidenced by (i) that certain promissory note dated the date hereof, executed by Borrower and made payable to the order of Lender in the amount of the Loan (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note") and (ii) that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated the date hereof, by Borrower in favor of Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Security Instrument").  The Note and the Security Instrument, together with all riders thereto and related certificates and ancillary documents, are collectively referred to herein as the "Loan Documents".

WHEREAS, pursuant to the Security Instrument, Borrower's obligations under the Loan Documents will be secured by, among other things, the real property described in the Security Instrument (collectively, the "Property").

WHEREAS, Guarantor is a direct or indirect owner of an equity interest in Borrower, and accordingly will derive material direct and indirect financial and other benefits from the transactions contemplated by the Note and the other Loan Documents.

WHEREAS, to induce Lender to make the Loan, Guarantor has agreed to execute and deliver this Guaranty.

NOW, THEREFORE, in consideration of the covenants set forth in this Guaranty, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree, represent and warrant as follows:

### ARTICLE 1

### NATURE AND SCOPE OF GUARANTY

Section 1.1    Guaranty of Obligation.  Guarantor hereby irrevocably and unconditionally guarantees the due and prompt payment and performance in full when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of the following (the "Guaranteed Obligations"):

(a)      the principal of, interest on, and all other amounts due at any time under the Note or any other Loan Document, including prepayment penalties, late payment charges, interest charged at the default rate (if applicable), and accrued interest as provided in the Loan Documents (including interest that may accrue during the pendency of any proceeding under Bankruptcy Laws as described below), advances, costs and expenses to perform the obligations of Borrower or to protect the Property or the security of the Security Instrument;

(b)      all other covenants, agreements, liabilities, obligations (including indemnity obligations and any other monetary obligations) of Borrower under the Loan Documents; and

(c)      all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any default under the Loan Documents or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding or any judicial or non-judicial foreclosure proceeding or other exercise by Lender of its rights and remedies under any Loan Document or any transfer in lieu of foreclosure (a "Foreclosure Event"), including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event, to the extent permitted by law.

Without limiting the generality of the foregoing, Guarantor's liability shall extend to all amounts that constitute part of the Guaranteed Obligations and would be owed by Borrower to Lender under the Loan Documents but for the fact that they are unenforceable or not allowable due to the existence of a proceeding under Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as the same may be amended from time to time, and any successor statute or statutes and all rules and regulations from time to time promulgated thereunder, and any comparable foreign laws relating to bankruptcy, insolvency or creditors' rights or any other Federal or state bankruptcy or insolvency law (collectively, "Bankruptcy Laws").

Section 1.2    Nature of Guaranty.    Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.  This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance and not merely a guaranty of collection.  This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor.  If Guarantor is a married person, and the state of residence of Guarantor or Guarantor's spouse is a community property jurisdiction, Guarantor agrees that Lender may satisfy Guarantor's obligations under this Guaranty to the extent of all of Guarantor's separate property and Guarantor's interest in any community property.

Section 1.3    Survival of Guaranty.    This Guaranty is a continuing guaranty and shall remain in full force and effect until the repayment and performance in full of the Guaranteed Obligations (subject to Section 1.8).  The obligations of Guarantor under this Guaranty shall survive any Foreclosure Event, and any release or reconveyance of the Security Instrument or any release of any other security or guaranty for the Loan.

Section 1.4    Obligations Unsecured. The obligations of Guarantor under this Guaranty shall not be secured by the Security Instrument or the other Loan Documents and shall not be obligations of Borrower notwithstanding anything to the contrary in any other Loan Document.

Section 1.5    Payment by Guarantor. If all or any part of the Guaranteed Obligations is or shall give rise to a monetary obligation, and such monetary obligation shall not be punctually paid when due, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth in such demand. Such demand(s) may be made at any time coincident with or after the time for payment of the Guaranteed Obligations.

Section 1.6    No Duty to Pursue Others. It shall not be necessary for Lender (and Guarantor hereby waives any rights which it may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (a) make any demand upon or institute suit or exhaust its remedies against Borrower or others liable for amounts due under the Guaranteed Obligations or any other person or entity, (b) institute suit or exhaust its remedies with respect to the Guaranteed Obligations or any person or entity, (c) enforce Lender's rights against any collateral which shall ever have been given to secure any of the Guaranteed Obligations, (d) enforce Lender's rights against any other guarantor of the Guaranteed Obligations, (e) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty or (f) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

Section 1.7    Payment of Expenses. Guarantor shall, immediately upon demand by Lender, pay all reasonable costs and out-of-pocket expenses (including court costs and attorneys' fees, disbursements, costs and expenses) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder and any and all damages, losses, claims, liabilities and related reasonable costs and out-of-pocket expenses, including court costs and attorneys' fees, disbursements, costs and expenses incurred by Lender arising from any breach or failure to timely perform any provisions of this Guaranty by Guarantor.

Section 1.8    Reinstatement. In the event that, pursuant to any controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions (collectively, "Applicable Law"), including any Bankruptcy Law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations (including pursuant to any settlement entered into by Lender in its discretion), or if Lender elects to do so upon the advice of its counsel, then all obligations under this Guaranty in respect of such payment shall automatically be reinstated as though such payment had been due but not made and shall remain in full force and effect and any prior release or discharge from the terms of this Guaranty given to Guarantor shall be without effect. It is the intention of Lender and Guarantor that Guarantor's obligations hereunder shall not be discharged except by its performance of such obligations and then only to the extent of such performance.

## ARTICLE 2

## EVENTS AND CIRCUMSTANCES NOT REDUCING
## OR DISCHARGING GUARANTOR'S OBLIGATIONS

Section 2.1    Events and Circumstances.  Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including rights to notice) that Guarantor might otherwise have as a result of or in connection with any of the following:

(a)    Modifications.  Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Loan Documents, or any other document, instrument, contract or understanding between Borrower or Guarantor and Lender, or any other person or entity, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

(b)    Adjustment.  Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or Guarantor.

(c)    Financial Condition.  The commencement, filing or continuation of any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshaling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other person or entity, or any of their respective property or creditors or any action taken by any trustee or receiver or by any court in such proceeding; or the making of a general assignment for the benefit of creditors by Borrower, Guarantor or any other person or entity; or any sale, lease or transfer of any or all of the assets of Borrower, Guarantor or any other person or entity.

(d)    Invalidity of Guaranteed Obligations.  The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including the fact that (a) the Guaranteed Obligations, or any part thereof, exceeds the amount permitted by law, (b) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (c) the officers or representatives executing the Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (d) the Guaranteed Obligations violate applicable usury laws, (e) Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially unenforceable or uncollectible from Borrower, other than payment and performance in full of the Guaranteed Obligations, (f) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or that was executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (g) the Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed

that Guarantor shall remain liable hereon regardless of whether Borrower or any other person or entity be found not liable on the Guaranteed Obligations or any part thereof for any reason.

(e)     Release of Liability.  Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other person or entity now or hereafter liable therefor, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being acknowledged and agreed by Guarantor that (a) Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of Borrower or any other person or entity and (b) Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that any other person or entity will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to any other person or entity to pay or perform the Guaranteed Obligations.

(f)     Other Collateral.  The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

(g)     Release of Collateral.    Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations, or any failure to perfect a lien in any collateral.

(h)     Care and Diligence.  The failure of Lender or any other person or entity to exercise diligence or reasonable care in the enforcement of its rights under the Loan Documents or the preservation, protection, enforcement, sale or other handling or treatment of all or any part of any collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the enforcement or collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

(i)     Unenforceability.  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being acknowledged and agreed by Guarantor that it is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations or the priority of any security interest or lien therein.

(j)     Offset.  Any existing or future offset, claim or defense of Borrower, Guarantor or any other person or entity, against Lender, Borrower or any other person or entity or against payment or performance of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed

Obligations) or otherwise, other than the payment and performance of the Guaranteed Obligations in full.

(k)     Compliance with Loan Documents.  Any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the Guaranteed Obligations or Lender to conform or comply with any term of any of the Loan Documents.

(l)     Corporate Events.  The reorganization, merger or consolidation of Borrower into or with any other person or entity; or any dissolution of Borrower or any other entity; or any changes in the shareholders, partners or members of Borrower or any other person or entity; or any reorganization of Borrower or any other person or entity; or any other change in the relationship between Borrower, Guarantor or any other guarantor of the Guaranteed Obligations, or any termination of such relationship.

(m)     Preference.  Any payment by Guarantor to Lender that is held to constitute a preference under Bankruptcy Laws, or for any reason Lender is required to refund such payment or pay such amount to any other person or entity.

(n)     Other Actions Taken or Omitted.  Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or any other person or entity or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof.

It is the unambiguous and unequivocal intention of Guarantor that it shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or not contemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and performance of the Guaranteed Obligations.

## ARTICLE 3

## GUARANTOR WAIVERS

Section 3.1     Waiver of Applicable Laws.  Guarantor hereby irrevocably waives the benefit of all principles and provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances, whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor) and the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors.

Section 3.2     Waiver of Notice.  Guarantor hereby waives all notices with respect to the Loan Documents and this Guaranty that may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including notice of (a) any loan or other indebtedness of Borrower, (b) acceptance of this Guaranty, (c) the execution and delivery

by Borrower of any documents or instruments relating to the Loan or in connection with the Property or any collateral, (d) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (e) the occurrence of any default under the Loan Documents, (f) dishonor, (g) notice of intent to accelerate, notice of acceleration, (h) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral under the Loan Documents, (i) protest, proof of non-payment or default by Borrower or any other guarantor of the Guaranteed Obligations and (j) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty or the other Loan Documents.

Section 3.3    Changes in the Guaranteed Obligations.  At any time or from time to time and any number of times, without notice to Guarantor and without releasing, discharging or affecting the liability of Guarantor hereunder:  (a) the time for payment of the principal of, interest on or other amounts payable under the Loan may be extended or the Loan may be renewed in whole or in part; (b) the rate of interest on or period of amortization of the Loan or the amount of the monthly principal payments payable under the Loan Documents may be modified; (c) the time for Borrower's performance of or compliance with any covenant or agreement contained in any Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived; (d) the maturity of the Loan may be accelerated as provided in the Loan Documents; (e) any or all payments due under the Loan Documents may be reduced; (f) any Loan Document may be modified or amended by Lender and Borrower in any respect, including an increase in the principal amount of the Loan; (g) any amounts held under the Loan Documents may be released; (h) the payment of the principal of, interest on or other amounts payable under Loan or any security for the Loan, or both, may be subordinated to the right to payment or the security, or both, of any other present or future creditor of Borrower; (i) any payments made by Borrower to Lender may be applied to the principal of, interest on or other amounts payable under the Loan in such order and priority as Lender determines; (j) Lender may foreclose on any collateral securing the Loan by one or more judicial or non-judicial sales, accept an assignment of any such collateral in lieu of foreclosure; and (k) any other terms of the Loan Documents may be modified as required by Lender.

## ARTICLE 4

## REPRESENTATIONS AND WARRANTIES

Section 4.1    Representations and Warranties.  To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as of the date hereof as follows:

(a)    This Guaranty constitutes a legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with its terms, subject only to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(b)    The execution, delivery and performance of this Guaranty by Guarantor (i) will not result in any violation of the provisions of any Applicable Laws, (ii) will not conflict with or result

in a breach of any of the terms or provisions of, or constitute a default under the terms of any indenture, mortgage, deed of trust, deed to secure debt, loan agreement, management agreement or other agreement or instrument to which Guarantor is a party or to which any of Guarantor's property or assets is subject, and (iii) will not result in or require the creation or imposition of any lien upon or with respect to any of the assets of Guarantor.

(c)     Any consent, approval, authorization, order, registration or qualification of or with a governmental authority or other person or entity required for the execution, delivery and performance by Guarantor of this Guaranty has been obtained and is in full force and effect.

(d)     Guarantor is an affiliate of Borrower, is the owner of a direct or indirect equity interest in Borrower, and has received, or will receive, direct and indirect material financial and other benefits from the making of this Guaranty.

(e)     Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Guaranteed Obligations; provided, however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

(f)     Neither Lender nor any of its representatives has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty and Guarantor has not relied on Lender for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Guaranty or any other Loan Document or otherwise relied on Lender in any manner in connection with interpreting, entering into or otherwise in connection with this Guaranty, any other Loan Document or any of the matters contemplated hereby or thereby.

(g)     Guarantor has received a copy of each of the Loan Documents and this Guaranty. Guarantor has read this Guaranty and each of the other Loan Documents and understands the nature and structure of the transactions contemplated by this Guaranty and the other Loan Documents. Guarantor understands the risks inherent in such transactions, including the risk of loss of all or any part of the Property or of the assets of Guarantor. Guarantor has had the opportunity to consult with its legal counsel prior to entering into the Guaranty and Guarantor availed himself or herself of such opportunity to the extent he or she desired.

(h)     There are no actions, suits or proceedings at law or in equity by or before any governmental authority, arbitrator or other entity now pending or, to Guarantor's knowledge, threatened against or affecting Guarantor.

(i)     Guarantor has (i) not entered into the transaction contemplated by this Guaranty with the actual intent to hinder, delay or defraud any creditor and (ii) received reasonably equivalent value in exchange for its obligations under this Guaranty. After giving effect to this Guaranty, (x) the fair saleable value of Guarantor's assets will exceed its total liabilities, (y) Guarantor's assets will not constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted and (z) Guarantor will be able to pay its liabilities as

they mature. In the last ten years, Guarantor has not been the subject of or a party to any pending bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation (each, an "Event of Bankruptcy"). Guarantor is not contemplating an Event of Bankruptcy and to Guarantor's knowledge no other person or entity is contemplating an Event of Bankruptcy in respect of Guarantor.

## ARTICLE 5

### AGREEMENT TO PAY, SUBROGATION AND SUBORDINATION

Section 5.1    Subordination of All Guarantor Claims.

(a)    Without limiting any other right that Lender has at law or in equity against Guarantor, if Borrower fails to pay any Guaranteed Obligation when and as due, whether at maturity, by acceleration, after notice of prepayment or otherwise, Guarantor agrees to promptly pay the amount of such unpaid Guaranteed Obligations to Lender in cash. Upon payment by Guarantor of any sums to Lender as provided herein, all of Guarantor's rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against Borrower with respect to such sum shall be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all monetary Guaranteed Obligations. If any payment shall be paid to Guarantor in violation of the immediately preceding sentence on account of such subrogation, exoneration, contribution, reimbursement, indemnity or similar right, such amount shall be held in trust for the benefit of Lender, segregated from other funds of Guarantor, and promptly paid or delivered to Lender in the same form as so received (with any necessary endorsement or assignment) to be credited against the payment of the Guaranteed Obligations, whether due or to become due, in accordance with the terms of the Loan Documents or to be held as collateral for the Guaranteed Obligations.

(b)    Guarantor hereby subordinates any and all debts, liabilities and obligations owed to it by Borrower (including all rights and claims of Guarantor against Borrower as a result of Guarantor's payment of all or part of the Guaranteed Obligations) (the "Subordinated Obligations") to the Guaranteed Obligations as follows:

(i)    Guarantor shall not accept, demand or take any action to collect any payment on the Subordinated Obligations without the prior written consent of Lender.

(ii)    Guarantor agrees that Lender shall be entitled to receive full payment in cash of all Guaranteed Obligations (including interest accruing during the pendency of any proceeding under Bankruptcy Laws, regardless of whether allowed or allowable in such proceeding ("Post-Petition Interest")) in any proceeding under Bankruptcy Laws against Borrower before Guarantor receives any payment on account of any Subordinated Obligations.

(iii)    After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Guarantor shall collect, enforce and receive payments on the Subordinated Obligations as trustee for Lender and deliver such payments to Lender on account

of the Guaranteed Obligations (including Post-Petition Interest), together with any necessary endorsements or other instruments of transfer, without reducing or affecting the liability of Guarantor under this Guaranty in any respect.

(iv)     After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Lender is authorized and empowered (but not obligated), in its discretion, (x) in the name of Guarantor, to collect and enforce, and to submit claims in respect of, Subordinated Obligations and to apply any amount so received to the Guaranteed Obligations (including Post-Petition Interest), and (y) to require Guarantor (A) to collect and enforce and to submit claims in respect of, Subordinated Obligations and (B) to pay any amounts received on such obligations to Lender for application to the Guaranteed Obligations (including Post-Petition Interest).

Section 5.2     Payments Held in Trust.   In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payments, claims and/or distributions which are prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims and/or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

Section 5.3     Liens Subordinate.   Guarantor agrees that no liens, security interests, judgment liens, charges or other encumbrances shall exist upon Borrower's assets securing payment of the Subordinated Obligations and any such liens, security interests, judgment liens, charges or other encumbrances which may exist shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach.  Without the prior written consent of Lender, Guarantor shall not (a) exercise or enforce any creditor's right it may have against Borrower, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including the commencement of, or joinder in, any proceeding under Bankruptcy Laws) to enforce any liens, mortgages, deeds of trust, deeds to secure debt, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

## ARTICLE 6

## MISCELLANEOUS

Section 6.1     Waiver; Amendment.   No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right.  The rights of Lender hereunder shall be in addition to all other rights provided by law.  No modification, amendment, extension, discharge, termination or waiver of any provision of this Guaranty, nor consent to any departure by Guarantor or Lender therefrom, shall in any event be

effective unless the same shall be in a writing signed by the party or parties against whom enforcement is sought, and then any such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 6.2    Notices. All notices given by Guarantor or Lender in connection with this Guaranty must be in writing. Any notice to Guarantor in connection with this Guaranty shall be deemed to have been given to Guarantor when mailed by first class mail or when actually delivered to Guarantor's notice address if sent by other means. Guarantor's notice address shall be the address set forth on the signature page hereto unless Guarantor has designated a substitute notice address by notice to Lender. Guarantor shall promptly notify Lender of Guarantor's change of address. If Lender specifies a procedure for reporting Guarantor's change of address, then Guarantor shall only report a change of address through that specified procedure. There may be only one designated notice address under this Guaranty at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated in the Definitions Section of the Note unless Lender has designated another address by notice to Guarantor. Any notice in connection with this Guaranty shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Guaranty is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Guaranty.

Section 6.3    Governing Law. This Guaranty shall be governed by federal law and the law of New York without regard to the application of choice of law principles that would result in the application of the laws of another jurisdiction.

Section 6.4    Venue. Guarantor agrees that any controversy arising under or in relation to this Guaranty shall be litigated exclusively in New York. The state and federal courts and authorities with jurisdiction in New York shall have exclusive jurisdiction over all controversies that arise under or in relation to this Guaranty or any other Loan Document with respect to the subject matter hereof. Guarantor irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

Section 6.5    WAIVER OF JURY TRIAL. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS GUARANTY OR ANY LOAN DOCUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY GUARANTOR, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

Section 6.6    Severability. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid pursuant to Applicable Law, but if any

provision of this Guaranty shall be prohibited by or invalid pursuant to Applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

Section 6.7    Prior Agreements.    THIS GUARANTY REPRESENTS THE FINAL AGREEMENT OF GUARANTOR WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS.    THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.    All prior or contemporaneous agreements, understandings, representations and statements, oral or written, relating to the subject matter hereof are superseded by this Guaranty.

Section 6.8    Defined Terms; Construction.

(a)    Capitalized terms used herein without definition shall have the meanings ascribed thereto in the other Loan Documents.

(b)    Any reference in this Guaranty to a "Section" shall, unless otherwise explicitly provided, be construed as referring to a Section of this Guaranty.

(c)    The Article and Section headings in this Guaranty are included herein for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose.

(d)    Any reference in this Guaranty to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(e)    Use of the singular in this Guaranty includes the plural and use of the plural includes the singular.

(f)    As used in this Guaranty, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(g)    Whenever Guarantor's knowledge is implicated in this Guaranty or the phrase "to Guarantor's knowledge" or a similar phrase is used in this Guaranty, Guarantor's knowledge or such phrase(s) shall be interpreted to mean to the best of Guarantor's knowledge after reasonable and diligent inquiry and investigation.

(h)    Unless otherwise provided in this Guaranty, if Lender's approval, consent, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, consent, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(i)    All references in this Guaranty to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(j)     The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

Section 6.9     Recitals.  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

Section 6.10   Rights and Remedies.  If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

Section 6.11   Taxes.  Any payments by or on account of any obligation of Guarantor under this Guaranty shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with Applicable Law and the sum payable hereunder shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Lender.  Guarantor shall promptly indemnify Lender for all such non-excluded taxes (including interest and additions to tax) and related expenses.  Guarantor shall promptly deliver evidence satisfactory to Lender of any payments made pursuant to this Section 6.11.

Section 6.12   Assignment.  Lender may assign its rights under this Guaranty in whole or in part and, upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of and may be enforced by such assignee to the extent so assigned.  Guarantor may not assign its rights, duties and obligations under this Guaranty, in whole or in part, without Lender's prior written consent, and any such assignment shall be deemed void ab initio.  The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties.

Section 6.13   Time is of the Essence.  Guarantor agrees that, with respect to each and every obligation and covenant contained in this Guaranty, time is of the essence.

Section 6.14   Credit Report.  Guarantor acknowledges and agrees that Lender is authorized, no more frequently than once in any twelve (12) month period, to obtain a credit report (if applicable) on Guarantor, the cost of which shall be paid for by Guarantor.  Guarantor acknowledges and agrees that Lender is authorized to obtain a credit score (if applicable) for Guarantor at any time at Lender's expense.

Section 6.15    State-Specific Provisions.  Not applicable.

Section 6.16    Community Property Provision.  Not applicable.

The parties executing this Guaranty intend to create an instrument executed under seal.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Guarantor has signed and delivered this Guaranty as of the date first written above, under seal (where applicable).  Where Applicable Law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

GUARANTOR:

_____ (SEAL)
ARTHUR SPITZER

Address for Notices to Guarantor:
123 Ave I
Brooklyn, NY 11230

Guarantor represents and warrants that
Guarantor is:

[____] single
[X] married
[____] an entity

Guarantor represents and warrants that
Guarantor is a resident of New York.

Guaranty (Arthur Snitzer) - Page 15 of 15
Loan ID ██████████
Property Address: 1567 56 Street, Brooklyn, NY 11219

Exhibit F



**Report Date:** 03/30/2022

# Loan Master Report

| Company | FCI Lender Services, Inc. | | Account Number: | ▇▇▇▇▇▇▇ |
|---|---|---|---|---|
| | PO Box 27370 | | Primary Borrower: | 1567 56 NY LLC |
| | Anaheim CA 92809-0112 | | Primary Property: | 1569 56th St |
| | 800-931-2424 | | | Brooklyn NY Brooklyn |

## Account Activity From 9/10/2019

| Transaction Date | Payment Due Date | Reference | Description | Transaction Amount | Interest | Principal | LateChgs | Other | Reserve | Impound | CurrentBalance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | $1,200,000.00 |
| 10/31/2019 | 10/01/2019 | 1030 | RegPmt | $9,518.00 | $9,500.00 | $0.00 | $0.00 | $18.00 | $0.00 | $0.00 | $1,200,000.00 |
| 10/31/2019 | | 1030 | Late Charge | -$475.00 | | | -$475.00 | | | | |
| 10/31/2019 | 10/31/2019 | CBP | [CBP] VCheck Confirmation 19 | -$18.00 | $0.00 | $0.00 | $0.00 | -$18.00 | $0.00 | $0.00 | $1,200,000.00 |
| 10/31/2019 | | CBP | Late Charge | $0.00 | | | $0.00 | | | | |
| 12/03/2019 | 12/03/2019 | CBP | [CBP] VCheck Confirmation 19 | -$18.00 | $0.00 | $0.00 | $0.00 | -$18.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/03/2019 | | CBP | Late Charge | $0.00 | | | $0.00 | | | | |
| 12/03/2019 | 11/01/2019 | CBP-12219 | RegPmt | $9,518.00 | $9,500.00 | $0.00 | $0.00 | $18.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/03/2019 | | CBP-12219 | Late Charge | -$475.00 | | | -$475.00 | | | | |
| 12/31/2019 | 12/01/2019 | CBP-1101 | RegPmt | $9,515.00 | $9,500.00 | $0.00 | $0.00 | $15.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/31/2019 | | CBP-1101 | Late Charge | $0.00 | | | $0.00 | | | | |
| 12/31/2019 | 12/31/2019 | ExpPmt | [ExpPmt] VCheck Confirmation | -$15.00 | $0.00 | $0.00 | $0.00 | -$15.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/31/2019 | | ExpPmt | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/15/2020 | 01/15/2020 | ExpPmt | [ExpPmt] VCheck Confirmation | -$15.00 | $0.00 | $0.00 | $0.00 | -$15.00 | $0.00 | $0.00 | $1,200,000.00 |
| 01/15/2020 | | ExpPmt | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/15/2020 | 01/01/2020 | CBP-8578 | RegPmt | $9,515.00 | $9,500.00 | $0.00 | $0.00 | $15.00 | $0.00 | $0.00 | $1,200,000.00 |
| 01/15/2020 | | CBP-8578 | Late Charge | -$475.00 | | | -$475.00 | | | | |
| 02/29/2020 | 02/01/2020 | 1556 | RegPmt | $9,515.00 | $9,500.00 | $0.00 | $0.00 | $15.00 | $0.00 | $0.00 | $1,200,000.00 |
| 02/29/2020 | | 1556 | Late Charge | -$475.00 | | | -$475.00 | | | | |
| 02/29/2020 | 02/29/2020 | ExpPmt | [ExpPmt] VCheck Confirmation | -$15.00 | $0.00 | $0.00 | $0.00 | -$15.00 | $0.00 | $0.00 | $1,200,000.00 |
| 02/29/2020 | | ExpPmt | Late Charge | $0.00 | | | $0.00 | | | | |
| 06/04/2020 | 06/04/2020 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 07/02/2020 | 07/02/2020 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 07/02/2020 | 07/02/2020 | wire- | OtherCash | $6,885.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,885.00 | $0.00 | $1,200,000.00 |
| 07/02/2020 | | wire- | Late Charge | $0.00 | | | | $0.00 | | | |
| 07/28/2020 | 07/28/2020 | Regular | Check | -$6,885.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$6,885.00 | $0.00 | $1,200,000.00 |
| 07/28/2020 | | Regular | Late Charge | $0.00 | | | | $0.00 | | | |
| 08/04/2020 | 08/04/2020 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 08/10/2020 | 08/10/2020 | | Foreclosure Admin Fee | -$225.00 | $0.00 | $0.00 | $0.00 | -$225.00 | $0.00 | $0.00 | $1,200,000.00 |
| 09/08/2020 | 09/08/2020 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 09/11/2020 | 09/11/2020 | | Appraisal Cost | -$475.00 | $0.00 | $0.00 | $0.00 | -$475.00 | $0.00 | $0.00 | $1,200,000.00 |
| 10/02/2020 | 10/02/2020 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 11/03/2020 | 11/03/2020 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/02/2020 | 12/02/2020 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/30/2020 | 12/30/2020 | 410223 | Foreclosure Attorney Fees | -$1,459.00 | $0.00 | $0.00 | $0.00 | -$1,459.00 | $0.00 | $0.00 | $1,200,000.00 |



**Report Date:** 03/30/2022

# Loan Master Report

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/30/2020 | | 410223 | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/06/2021 | 01/06/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 01/11/2021 | 01/11/2021 | 420581 | Foreclosure Attorney Fees | -$96.00 | $0.00 | $0.00 | $0.00 | -$96.00 | $0.00 | $0.00 | $1,200,000.00 |
| 01/11/2021 | | 420581 | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/29/2021 | 01/29/2021 | 425668 | Foreclosure Attorney Fees | -$320.00 | $0.00 | $0.00 | $0.00 | -$320.00 | $0.00 | $0.00 | $1,200,000.00 |
| 01/29/2021 | | 425668 | Late Charge | $0.00 | | | $0.00 | | | | |
| 02/05/2021 | 02/05/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 03/03/2021 | 03/03/2021 | 429221 | Foreclosure Attorney Fees | -$972.00 | $0.00 | $0.00 | $0.00 | -$972.00 | $0.00 | $0.00 | $1,200,000.00 |
| 03/03/2021 | | 429221 | Late Charge | $0.00 | | | $0.00 | | | | |
| 03/05/2021 | 03/05/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 04/06/2021 | 04/06/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 04/08/2021 | 04/08/2021 | Insurance | Lender Placed Insurance | -$6,866.13 | $0.00 | $0.00 | $0.00 | -$6,866.13 | $0.00 | $0.00 | $1,200,000.00 |
| 04/08/2021 | | Insurance | Late Charge | $0.00 | | | $0.00 | | | | |
| 05/04/2021 | 05/04/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 06/04/2021 | 06/04/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 06/09/2021 | 06/09/2021 | 439314 | Foreclosure Attorney Fees | -$694.00 | $0.00 | $0.00 | $0.00 | -$694.00 | $0.00 | $0.00 | $1,200,000.00 |
| 06/09/2021 | | 439314 | Late Charge | $0.00 | | | $0.00 | | | | |
| 07/09/2021 | 07/09/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 08/04/2021 | 08/04/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 09/02/2021 | 09/02/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 09/15/2021 | 09/15/2021 | Insurance | Lender Placed Insurance | -$6,866.13 | $0.00 | $0.00 | $0.00 | -$6,866.13 | $0.00 | $0.00 | $1,200,000.00 |
| 09/15/2021 | | Insurance | Late Charge | $0.00 | | | $0.00 | | | | |
| 10/11/2021 | 10/11/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 10/13/2021 | 10/13/2021 | 502651 | Foreclosure Attorney Fees | -$131.20 | $0.00 | $0.00 | $0.00 | -$131.20 | $0.00 | $0.00 | $1,200,000.00 |
| 10/13/2021 | | 502651 | Late Charge | $0.00 | | | $0.00 | | | | |
| 10/13/2021 | 10/13/2021 | 508371 | Foreclosure Attorney Fees | -$192.00 | $0.00 | $0.00 | $0.00 | -$192.00 | $0.00 | $0.00 | $1,200,000.00 |
| 10/13/2021 | | 508371 | Late Charge | $0.00 | | | $0.00 | | | | |
| 11/05/2021 | 11/05/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/06/2021 | 12/06/2021 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/15/2021 | 12/15/2021 | 513082 | Foreclosure Attorney Fees | -$32.00 | $0.00 | $0.00 | $0.00 | -$32.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/15/2021 | | 513082 | Late Charge | $0.00 | | | $0.00 | | | | |
| 12/15/2021 | 12/15/2021 | 517337 | Foreclosure Attorney Fees | -$2,022.00 | $0.00 | $0.00 | $0.00 | -$2,022.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/15/2021 | | 517337 | Late Charge | $0.00 | | | $0.00 | | | | |
| 12/28/2021 | 12/28/2021 | 350467 | BPO Cost | -$110.00 | $0.00 | $0.00 | $0.00 | -$110.00 | $0.00 | $0.00 | $1,200,000.00 |
| 12/28/2021 | | 350467 | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/18/2022 | 01/18/2022 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 01/31/2022 | 01/31/2022 | 522921 | Foreclosure Attorney Fees | -$2,442.00 | $0.00 | $0.00 | $0.00 | -$2,442.00 | $0.00 | $0.00 | $1,200,000.00 |
| 01/31/2022 | | 522921 | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/31/2022 | 01/31/2022 | 527333 | Foreclosure Attorney Fees | -$1,348.00 | $0.00 | $0.00 | $0.00 | -$1,348.00 | $0.00 | $0.00 | $1,200,000.00 |
| 01/31/2022 | | 527333 | Late Charge | $0.00 | | | $0.00 | | | | |
| 01/31/2022 | 01/31/2022 | 532537 | Foreclosure Attorney Fees | -$1,736.40 | $0.00 | $0.00 | $0.00 | -$1,736.40 | $0.00 | $0.00 | $1,200,000.00 |
| 01/31/2022 | | 532537 | Late Charge | $0.00 | | | $0.00 | | | | |
| 02/07/2022 | 02/07/2022 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 03/03/2022 | 03/03/2022 | | NY Property Inspection Costs | -$16.00 | $0.00 | $0.00 | $0.00 | -$16.00 | $0.00 | $0.00 | $1,200,000.00 |
| 03/09/2022 | 03/09/2022 | 538628 | Foreclosure Attorney Fees | -$1,468.00 | $0.00 | $0.00 | $0.00 | -$1,468.00 | $0.00 | $0.00 | $1,200,000.00 |
| 03/09/2022 | | 538628 | Late Charge | $0.00 | | | $0.00 | | | | |
| 03/15/2022 | 03/15/2022 | 545313 | Foreclosure Attorney Fees | -$1,254.00 | $0.00 | $0.00 | $0.00 | -$1,254.00 | $0.00 | $0.00 | $1,200,000.00 |

**Report Date:** 03/30/2022

## Loan Master Report

| 03/15/2022 | 545313 | Late Charge | $0.00 | | $0.00 | | | |
|---|---|---|---|---|---|---|---|---|
| | | | $47,500.00 | $0.00 | $-1,900.00 | $29,060.86 | $0.00 | $0.00 |



Statement Date: 03/30/2022  11:59:59 P

**Borrower Statement
Of Account**

**Loan**  Account: █████████

1567 56 NY LLC
Arthur Spitzer
54 Stevens Ave
Jersey City, NJ 07305

**Summary**

| | |
|---|---|
| **Reporting Period** | 09/01/2019 - 03/30/2022 |
| **Principal Balance** | $1,200,000.00 |
| **Trust Balance** | $0.00 |
| **Unpaid Late Charges** | $1,900.00 |
| **Unpaid Charges** | $30,088.21 |
| **Unpaid Interest** | |
| **Accrued Late Charges** | $475.00 |
| **Regular Payment** | $9,500.00 |
| **Note Rate** | 9.500% |

| ACCOUNT ACTIVITY | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Date Received | Date Due | Reference | Description | Transaction Amount | Interest | Principal | Late Charge | Other | Trust | Balance |
| | | | | | | | Balance Forward | | | $0.00 |
| 09/01/2019 | | | Funding | -$1,200,000.00 | $0.00 | -$1,200,000.00 | $0.00 | $0.00 | $0.00 | $1,200,000.00 |
| 09/06/2019 | | WIRE | OtherCash | $1,583.35 | $1,583.35 | $0.00 | $0.00 | $0.00 | $0.00 | $1,200,000.00 |
| 10/31/2019 | 10/01/2019 | 1030 | RegPmt | $9,518.00 | $9,500.00 | $0.00 | $0.00 | $18.00 | $0.00 | $1,200,000.00 |
| 12/03/2019 | 11/01/2019 | CBP-12219 | RegPmt | $9,518.00 | $9,500.00 | $0.00 | $0.00 | $18.00 | $0.00 | $1,200,000.00 |
| 12/31/2019 | 12/01/2019 | CBP-1101 | RegPmt | $9,515.00 | $9,500.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,200,000.00 |
| 01/15/2020 | 01/01/2020 | CBP-8578 | RegPmt | $9,515.00 | $9,500.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,200,000.00 |
| 02/29/2020 | 02/01/2020 | 1556 | RegPmt | $9,515.00 | $9,500.00 | $0.00 | $0.00 | $15.00 | $0.00 | $1,200,000.00 |
| 07/02/2020 | | wire- | OtherCash | $6,885.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,885.00 | $1,200,000.00 |
| 07/28/2020 | | Regular | Check | -$6,885.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$6,885.00 | $1,200,000.00 |
| | | | | -$1,150,835.65 | $49,083.35 | $1,200,000.00 | $0.00 | $81.00 | $0.00 | |

| OUTSTANDING CHARGES | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Date Of Charge | Reference | Description | Interest Rate | Interest From | Owed To Account | Original Amount | Unpaid Balance | Accrued Interest | Total Amount |
| 10/13/21 | 508371 | Foreclosure Attc | 0.0% | 10/13/21 | 14462 | $192.00 | $192.00 | $0.00 | $192.00 |
| 01/18/22 | | NY Property Insp | 0.0% | 01/18/22 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 03/03/22 | | NY Property Insp | 0.0% | 03/03/22 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 12/15/21 | 517337 | Foreclosure Attc | 0.0% | 12/15/21 | 14462 | $2,022.00 | $2,022.00 | $0.00 | $2,022.00 |
| 03/03/21 | 429221 | Foreclosure Attc | 0.0% | 03/03/21 | 14462 | $972.00 | $972.00 | $0.00 | $972.00 |
| 03/09/22 | 538628 | Foreclosure Attc | 0.0% | 03/09/22 | 14462 | $1,468.00 | $1,468.00 | $0.00 | $1,468.00 |
| 03/15/22 | 545313 | Foreclosure Attc | 0.0% | 03/15/22 | 14462 | $1,254.00 | $1,254.00 | $0.00 | $1,254.00 |
| 08/10/20 | | Foreclosure Adm | 0.0% | 08/10/20 | 14462 | $225.00 | $225.00 | $0.00 | $225.00 |
| 05/04/21 | | NY Property Insp | 0.0% | 05/04/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 01/11/21 | 420581 | Foreclosure Attc | 0.0% | 01/11/21 | 14462 | $96.00 | $96.00 | $0.00 | $96.00 |
| 08/04/21 | | NY Property Insp | 0.0% | 08/04/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 06/09/21 | 439314 | Foreclosure Attc | 0.0% | 06/09/21 | 14462 | $694.00 | $694.00 | $0.00 | $694.00 |
| 04/06/21 | | NY Property Insp | 0.0% | 04/06/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 02/05/21 | | NY Property Insp | 0.0% | 02/05/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 01/31/22 | 522921 | Foreclosure Attc | 0.0% | 01/31/22 | 14462 | $2,442.00 | $2,442.00 | $0.00 | $2,442.00 |
| 11/03/20 | | NY Property Insp | 0.0% | 11/03/20 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 12/06/21 | | NY Property Insp | 0.0% | 12/06/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 11/05/21 | | NY Property Insp | 0.0% | 11/05/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 07/09/21 | | NY Property Insp | 0.0% | 07/09/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 09/08/20 | | NY Property Insp | 0.0% | 09/08/20 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 10/13/21 | 502651 | Foreclosure Attc | 0.0% | 10/13/21 | 14462 | $131.20 | $131.20 | $0.00 | $131.20 |
| 01/31/22 | 532537 | Foreclosure Attc | 0.0% | 01/31/22 | 14462 | $1,736.40 | $1,736.40 | $0.00 | $1,736.40 |
| 08/04/20 | | NY Property Insp | 0.0% | 08/04/20 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 09/02/21 | | NY Property Insp | 0.0% | 09/02/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 04/08/21 | Insurance | Lender Placed In | 10.0% | 04/01/14 | 14462 | $6,866.13 | $6,866.13 | $657.72 | $7,523.85 |
| 01/06/21 | | NY Property Insp | 0.0% | 01/06/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 12/15/19 | 513082 | Foreclosure Attc | 0.0% | 12/15/19 | 14462 | $32.00 | $32.00 | $0.00 | $32.00 |
| 12/02/20 | | NY Property Insp | 0.0% | 12/02/20 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 06/04/20 | | NY Property Insp | 0.0% | 06/04/20 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 12/28/21 | 350467 | BPO Cost | 0.0% | 12/28/21 | 14462 | $110.00 | $110.00 | $0.00 | $110.00 |

**OUTSTANDING CHARGES**

| Date Of Charge | Reference | Description | Interest Rate | Interest From | Owed To Account | Original Amount | Unpaid Balance | Accrued Interest | Total Amount |
|---|---|---|---|---|---|---|---|---|---|
| 10/02/20 | | NY Property Insp | 0.0% | 10/02/20 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 09/15/21 | Insurance | Lender Placed In | 10.0% | 09/07/21 | 14462 | $6,866.13 | $6,866.13 | $369.63 | $7,235.76 |
| 10/11/21 | | NY Property Insp | 0.0% | 10/11/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 12/30/20 | 410223 | Foreclosure Atto | 0.0% | 12/30/20 | 14462 | $1,459.00 | $1,459.00 | $0.00 | $1,459.00 |
| 07/02/20 | | NY Property Insp | 0.0% | 07/02/20 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 09/11/20 | | Appraisal Cost | 0.0% | 09/11/20 | 14462 | $475.00 | $475.00 | $0.00 | $475.00 |
| 02/07/22 | | NY Property Insp | 0.0% | 02/07/22 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 01/29/21 | 425668 | Foreclosure Atto | 0.0% | 01/29/21 | 14462 | $320.00 | $320.00 | $0.00 | $320.00 |
| 03/05/21 | | NY Property Insp | 0.0% | 03/05/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 06/04/21 | | NY Property Insp | 0.0% | 06/04/21 | 14462 | $16.00 | $16.00 | $0.00 | $16.00 |
| 01/31/22 | 527333 | Foreclosure Atto | 0.0% | 01/31/22 | 14462 | $1,348.00 | $1,348.00 | $0.00 | $1,348.00 |

**TRUST LEDGER**

| Date Received | Reference | Borrower Name | Memo | Payment | Clr | Deposit | Balance |
|---|---|---|---|---|---|---|---|
| 07/02/2020 | wire- | 1567 56 NY LLC | Borrower Payment: | $0.00 | R | $6,885.00 | $6,885.00 |
| 07/28/2020 | 630313 | 1567 56 NY LLC | Modification Refun | $6,885.00 | N | $0.00 | $0.00 |

## IMPORTANT DISCLOSURES

FCI Lender Services, Inc. ("FCI") is committed to professional and courteous service to our customers. If you have any questions or concerns, please call our Customer Service Department during our regular business hours at (800) 931-2424 ext. 651, Mon - Fri, 8:00 a.m. - 5:00 p.m., PT.

**ALL CONSUMERS: NOTICES OF ERROR AND REQUESTS FOR INFORMATION:** If you believe that there is an error in your account and you would like to submit a notice of error to FCI to resolve the error (Notice of Error); and/or, if you want to submit to FCI a request for documentation or information regarding your mortgage loan account (Information Request), **you must mail your Notice of Error and/or Information Request to the following exclusive address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 28960, Anaheim, CA 92809.** We do not accept a Notice of Error or Information Request sent to any other address or submitted to FCI by telephone, fax, or in any other manner, although you can call us if you have any questions about the Notice of Error and/or Information Request process. Your Notice of Error and/or Information Request should include the name of the borrower(s), the mortgage loan account number, and a description of the asserted error and/or the specific information and documentation requested.

**COLORADO CONSUMERS ONLY:** FCI Lender Services, Inc.'s agent in Colorado is located at 1776 S. Jackson Street #900, Denver, CO 80210-3808; PH: (720) 441-0010 option #1.

**MASSACHUSETTS CONSUMERS ONLY: NOTICE OF IMPORTANT RIGHTS**
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**NEW YORK CONSUMERS ONLY:** FCI Lender Services, Inc. ("FCI") is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920). You may obtain information about how to file a complaint about FCI with the New York State Department  of Financial Services, by visiting the Department's website at www.dfs.ny.gov or by calling the Department at 800-342-3736.

**OREGON CONSUMERS ONLY:** Oregon Rule #441-890-0070 - Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (servicer's toll-free phone number and email, if applicable). To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**PENNSYLVANIA CONSUMERS ONLY:** The lender retains a security interest in your residential real estate whenever the security interest has not been released.

**TEXAS CONSUMERS ONLY:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Exhibit G



**FCI Lender Services, Inc.**

Statement Date: 03/24/2022

# Demand Loan Payoff

| | | | |
|---|---|---|---|
| **Borrower** | 1567 56 NY LLC | **Servicer** | FCI Lender Services, Inc. |
| | 54 Stevens Ave | | 8180 E Kaiser Blvd, |
| | Jersey City, NJ 07305 | | Anaheim, CA 92808-2277 |
| | Account: ▉▉▉▉ | | 800-931-2424 |

<div style="background:red;color:white;text-align:center">This Demand Issued by FCI as Loan Servicer hereby Voids All prior Demands In Any Form and Requires the Receiver of this Demand to Call Prior to Payoff to Verify Funds, as Payoff Amounts May Change.</div>

| | |
|---|---|
| **Estimated Payoff Date** | **4/15/2022** |
| Loan Maturity Date | 9/1/2020 |
| Interest Paid to Date | 2/1/2020 |
| Next Payment Due Date | 3/1/2020 |
| Unpaid Principal Balance of Loan | $1,200,000.00 |
| Deferred Unpaid Principal Due | $0.00 |
| Note Interest Rate | 9.5000 % |
| Current Interest Rate (May include Default Interest Rate) | 16.0000 % |
| Note Rate Interest Due from 2/1/2020 to 4/15/2022 | $251,433.33 |
| Unaccrued Balance of Default Interest from 3/1/2020 to 4/15/2022 | $165,533.34 |
| Accrued/Unpaid Interest Due (May include Unpaid Default Interest) | $0.00 |
| Deferred Unpaid Interest Due | $0.00 |
| Unpaid Loan Fees | $0.00 |
| Prepayment Penalty Due | $0.00 |
| Other Payments | $0.00 |
| Late Fees Due from Paid-to-Date | $475.00 |
| Late Fees Unpaid/Due from Previous Payments | $1,900.00 |
| Late Fees Unpaid/Due & Deferred from Previous Servicer | $0.00 |
| Unpaid Loan Charges or Advances | $15,979.59 |
| Estimated Payoff Charges from Servicer | $0.00 |
| Suspense Balance | $0.00 |
| Escrow Balance | $0.00 |
| Restricted Funds | $0.00 |
| **Estimated Amount to Fully Pay Off this Loan:** | **$1,635,321.26** |
| Daily Interest Amount if Paying After: 4/15/2022 | $536.96 |

PLEASE BE ADVISED THAT THIS DEMAND IS ACCURATE AS OF ISSUANCE DATE BUT IT IS SUBJECT TO CHANGE. Additional interest, late charges, fees, and costs may be incurred by the Borrower between the Statement Date and the Payoff Date. ACCORDINGLY, PLEASE CALL (800) 931-2424 ext. 651 TO VERIFY THE PAYOFF AMOUNT PRIOR TO ISSUING PAYMENT. As required by state law, upon receipt of payment in FULL, FCI will process the release of lien, unless directed otherwise by lender.

Outstanding Checks:

Special Instructions:
**(1) Only Certified Funds or Wire Transfer will be accepted for Immediate Payoff.**
(2) Please make your disbursement payable to: FCI Lender Services, Inc.
(3) We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.
(4) PLEASE NOTE THIS DEMAND EXPIRES AND BECOMES NULL AND VOID ON 04/15/2022, as follows: (A) for Payment by Wire, at 2:00 p.m. PT; and (B) for Payment by Certified Funds, at 5:00 p.m. PT.
(5) THE DEMAND FEE IS DUE EVEN IF YOUR TRANSACTION IS CANCELLED.

Sincerely,

*Rosa Villalpando*

Rosa  Villalpando
FCI Lender Services, Inc.
800-931-2424 x 651
Fax: 714-282-2429

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Reserve | Impound | Other | Unp. Int. | Acc Late Chg | Unpaid Int Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Apply To | | | | |
| 03/01/2020 | 9.5000% | $ 9,500.00 | $ 0.00 | $ 9,500.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 475.00 | $ 0.00 | $ 1,200,000.00 |
| 04/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 05/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 06/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 07/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 08/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 09/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 10/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 11/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 12/01/2020 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 01/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 02/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 03/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 04/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 05/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 06/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 07/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 08/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 09/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 10/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 11/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 12/01/2021 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 01/01/2022 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 02/01/2022 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 03/01/2022 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 04/01/2022 | 16.0000% [1] | $ 16,000.00 | $ 0.00 | $ 16,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| 04/15/2022 | 16.0000% [1] | $ 7,466.67 | $ 0.00 | $ 7,466.67 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,200,000.00 |
| | | $ 416,966.67 | $ 0.00 | $ 416,966.67 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 475.00 | | |

[1] Using Default Interest Rate
[2] This transaction was already accomplished by the borrower.
[3] Rounding adjustment to match total payment amount.

| Itemization of Unpaid Charges | | | | | |
|---|---|---|---|---|---|
| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
| 06/04/2020 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 07/02/2020 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 08/04/2020 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 08/10/2020 | Foreclosure Admin Fee | 0.000% | $225.00 | $0.00 | $225.00 |
| 09/08/2020 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 09/11/2020 | Appraisal Cost | 0.000% | $475.00 | $0.00 | $475.00 |
| 10/02/2020 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 11/03/2020 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 12/02/2020 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 01/06/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 02/05/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 03/05/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 04/06/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 04/08/2021 | Lender Placed Insurance | 9.500% | $6,866.13 | $686.71 | $7,552.84 |
| 05/04/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 06/04/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 07/09/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 08/04/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 09/02/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 09/15/2021 | Lender Placed Insurance | 9.500% | $6,866.13 | $398.62 | $7,264.75 |
| 10/11/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 11/05/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 12/06/2021 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 12/28/2021 | BPO Cost | 0.000% | $110.00 | $0.00 | $110.00 |
| 01/18/2022 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 02/07/2022 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| 03/03/2022 | NY Property Inspection Costs | 0.000% | $16.00 | $0.00 | $16.00 |
| | | | | | $15,979.59 |

| Property List |
|---|
| 1569 56th St, Brooklyn NY 11219 |

## IMPORTANT DISCLOSURES

FCI Lender Services, Inc. ("FCI") is committed to professional and courteous service to our customers. If you have any questions or concerns, please call our Customer Service Department during our regular business hours at (800) 931-2424 ext. 651, Mon - Fri, 8:00 a.m. - 5:00 p.m., PT.

**ALL CONSUMERS: NOTICES OF ERROR AND REQUESTS FOR INFORMATION:** If you believe that there is an error in your account and you would like to submit a notice of error to FCI to resolve the error (Notice of Error); and/or, if you want to submit to FCI a request for documentation or information regarding your mortgage loan account (Information Request), **you must mail your Notice of Error and/or Information Request to the following exclusive address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 28960, Anaheim, CA 92809.** We do not accept a Notice of Error or Information Request sent to any other address or submitted to FCI by telephone, fax, or in any other manner, although you can call us if you have any questions about the Notice of Error and/or Information Request process. Your Notice of Error and/or Information Request should include the name of the borrower(s), the mortgage loan account number, and a description of the asserted error and/or the specific information and documentation requested.

**COLORADO CONSUMERS ONLY:** FCI Lender Services, Inc.'s agent in Colorado is located at 1776 S. Jackson Street #900, Denver, CO 80210-3808; PH: (720) 441-0010 option #1.

**MASSACHUSETTS CONSUMERS ONLY: NOTICE OF IMPORTANT RIGHTS**
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**NEW YORK CONSUMERS ONLY:** FCI Lender Services, Inc. ("FCI") is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920). You may obtain information about how to file a complaint about FCI with the New York State Department of Financial Services, by visiting the Department's website at www.dfs.ny.gov or by calling the Department at 800-342-3736.

**OREGON CONSUMERS ONLY:** Oregon Rule #441-890-0070 - Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (servicer's toll-free phone number and email, if applicable). To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**PENNSYLVANIA CONSUMERS ONLY:** The lender retains a security interest in your residential real estate whenever the security interest has not been released.

**TEXAS CONSUMERS ONLY:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Exhibit H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X

PS FUNDING, INC.,

                       Plaintiff,

    - against -

1567 56 NY LLC; ARTHUR SPITZER; RIVY
"DOE"; ABE "DOE";

                       Defendants.

**Index No.** 503948/2021

**AFFIDAVIT OF SUMS**

-----------------------------------------------------------------X

State of _North Carolina_ )
                       ) SS:
County of _Mecklenburg_ )

Brett Peiffer, being duly sworn deposes and says:

1.    I am an Authorized Signatory of PS Funding, Inc. (hereinafter "***Plaintiff***"). As the signatory of this affidavit, I have reviewed the statements set forth herein against the records kept by Plaintiff and have duly executed this affidavit based upon that review and upon my personal knowledge of the stated facts and circumstances and books and records maintained by Plaintiff, in my possession.

2.    Plaintiff and FCI Lender Services, Inc. (hereinafter "***FCI***") have entered into a master servicing agreement, whereby FCI is the sub-servicer for the loans held by Plaintiff. As part of this agreement, the records pertaining to Plaintiff's loans and the servicing of this loan are created by, and accessible to representatives of both Plaintiff and FCI. Thus, I have personal knowledge of how the records pertaining to Plaintiff's loans were made, kept and maintained by both Plaintiff and FCI.

3.    As Plaintiff's mortgage sub-servicer, FCI collects payments from borrowers and maintains up-to-date electronic records concerning the loans it services in its electronic record keeping system. I have access to FCI's business records relating to any and all of Plaintiff's

1

loans sub-serviced by FCI, including the business records for and relating to the subject loan. I make this affidavit based upon my review of those records relating to the loan ("**Subject Loan**") made to 1567 56 NY LLC (hereinafter "**Borrower**"), which is the subject of this action and from my own personal knowledge of how the records are kept and maintained. To my knowledge, the loan records related to the Subject Loan are, and have been, maintained by FCI in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with personal knowledge. Per my past dealings with FCI, based on my on my knowledge, it is the regular practice of FCI to keep such records in the ordinary course of a regularly conducted business activity.

4.      To the extent that the business records of the Subject Loan were created by a prior loan servicer, the prior servicer's records for the Subject Loan were integrated and boarded into FCI's systems, such that the prior servicer's records concerning the Subject Loan are now part of FCI's business records. To my knowledge, FCI conducts quality control and verification of the information received from the prior servicer as part of the boarding process to ensure the accuracy of the boarded records. To my knowledge, it is the regular practice of FCI to integrate prior servicer's records into FCI's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions, and that was done in relation to the Subject Loan. These prior servicer records are integrated and relied upon by FCI as part of FCI's business records.

5.      In my capacity as an Authorized Signatory, I am responsible for managing the Subject Loan made to Borrower. I have access to the business records of Plaintiff and FCI, including the business records for, and relating to the Subject Loan. I make this affidavit based upon my review of those records relating to the Subject Loan, and from my own personal

2

knowledge of how they were made, kept and maintained. The records for the Subject Loan,
including computerized records indicating the sums loaned to and payments made by the
Borrower, are made and maintained by Plaintiff and FCI in the course of its regularly conducted
business activities and are made at or near the time of the occurrence of the events which they
reflect, by or from information transmitted by a person with knowledge. It is a regular practice of
Plaintiff to make and keep such records in the ordinary course of a regularly conducted business
activity.

6.     I have knowledge of Borrower's advances made under the Loan Documents (as
defined below) evidencing the Subject Loan and original loan amount, payment records, credits
allowed, if any, delinquency status, current loan balance and all costs and expenses due, the Loan
Documents executed by Borrower and the date, time and public office in which the recordable
Loan Documents (e.g., mortgage, deed of trust, assignment of rents and lease) were filed of record.

7.     After reviewing the records at issue and the exhibits attached to this affidavit, to
my knowledge and belief Plaintiff's and FCI's employees followed the respective processes or
procedures for creating, accessing, and otherwise checking the accuracy of any of those records or
the attached Exhibits and no lack of trustworthiness is indicated from the source of information
from which the records were made or the methods or circumstances under which the records were
prepared.

8.     That on August 27, 2019, Defendant duly and delivered its promissory note
bearing the said date wherein and whereby Defendant promised to repay to Rosa Funding LLC
("***Lender***"), its successors or assigns, the sum of $1,200,000.00 with interest as set forth in the
promissory note (hereinafter "***Note***"). A copy of the Note is attached hereto and made a part
hereof as Exhibit "A".

9.     That to secure the payment of the sum represented by the Note, Defendant duly executed and delivered to Lender, on August 27, 2019, its first mortgage and security agreement (hereinafter "*Mortgage*") dated and acknowledged on that day, whereby Defendant mortgaged to Lender, its successors or assigns, the premises located at 1569 56th Street, Brooklyn, NY 11219 (Block 5488, Lot 49) (hereinafter "*Premises*"). A copy of the Mortgage is attached hereto and made a part hereof as Exhibit "B" and is more fully described in the verified complaint, which is attached hereto and made a part hereof as Exhibit "C".

10.     That said Mortgage was recorded in the Office of the City Register of the City of New York County of Kings on September 23, 2019, under CRFN: 2019000306604 and the mortgage recording tax thereon was duly paid.

11.     On August 27, 2019, Lender duly executed and delivered to PS Funding, Inc. (hereinafter "*Plaintiff*") an assignment of mortgage (hereinafter "*Assignment of Mortgage*") recorded on September 23, 2019 in the Office of the City Register of the City of New York County of Kings under CRFN: 2019000306605. A copy of the Assignment of Mortgage is attached hereto and made a part hereof as Exhibit "D".

12.     In order to further collaterally secure the obligation to Plaintiff, hereinbefore set forth on August 27, 2019, defendant Arthur Spitzer, duly executed, acknowledged and delivered to Plaintiff, its successors and/or assigns, an unconditional guaranty agreement (hereinafter "*Guaranty*"), which absolutely and unconditionally guarantees the prompt payment and performance of the indebtedness due on the Note and Mortgage. A copy of the Guaranty is attached hereto and made a part hereof as Exhibit "E".

13.     According to Plaintiff's and FCI's business records, Plaintiff directly (or through an agent or document custodian) has physical possession of the Note and Mortgage

(collectively known as the "***Loan Documents***") since August 27, 2019, which was prior to the time of the filing of the summons and complaint and notice of pendency. *See* Exhibits "A" through "D".

14.    The Mortgage contains, amongst other terms, a provision that if Defendant failed to keep promises and agreements contained therein or an event of default occurs, Plaintiff may require Defendant to pay immediately the entire amount remaining on the Note and under the Mortgage ("***Immediate Payment in Full***"). The Mortgage further states that if Plaintiff required Immediate Payment in Full, Plaintiff may bring a lawsuit to have the property sold. At such sale, Plaintiff will have the right to collect all costs and disbursements and additional allowances allowed by applicable law and will have the right to add all reasonable attorneys' fees to the amount owed to Plaintiff, such fees shall become part of the secured sums.

15.    Defendant failed to comply with the terms of the Loan Documents by failing to make the payment which became due on March 1, 2020, and each month thereafter, and for failing to pay the entire amount of principal, interest, and all other amounts due on the maturity date of the Note, September 1, 2020.

16.    All payments made by Defendant have been properly credited and applied to Defendant's delinquent account. To date, Defendant has not cured the default. A true and correct copy of the Loan's transaction history is attached as Exhibit "F".

17.    Accordingly, there is now the sum of $1,635,321.26 due and owing to Plaintiff, which includes the outstanding principal balance, accrued interest, late charges and applicable fees calculated through April 15, 2022. This Amount Due includes the following sums:

| | |
|---|---|
| Principal Balance | **$  1,200,000.00** |
| Interest at the Note rate from 6/1/2020 to 4/15/2022 | $     251,433.33 |
| | $     165,533.34 |

| Interest at the default rate from 7/1/2020 to 4/15/2022 | | |
|---|---|---|
| Late charges | S | 2,375.00 |
| Inspections and Advances | S | 15,979.53 |
| Total Amount Due | | $ 1,635,321.26 |

A copy of the payoff statement supporting this Amount Due is attached as **Exhibit "G".**

18.     Plaintiff exercised its option to declare the entire outstanding principal balance immediately due and payable, by filing of its summons and complaint in this action, on February 18, 2021.

19.     That at no time since the Defendants were notified of the default have they tendered the total amount necessary to either reinstate or fully satisfy the Note and Mortgage.

20.     That by the terms of the Note and Mortgage, Plaintiff is entitled to immediate payment in full of the entire outstanding principal balance of Defendant's obligation, and Plaintiff is entitled to judgment in this action.

21.     The Mortgaged Premises consists of a single parcel, which cannot be apportioned. Accordingly, the Mortgaged Premises must be sold in one (1) parcel.

**WHEREFORE**, I request that the Referee execute the Report of Amounts Due and Owing.

Brett Peiffer
Authorized Signatory of PS Funding, Inc.

Sworn to and subscribed before me this

7th day of April 2022

Notary Public

MATTHEW D DAMERON
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
09-01-2026

6

## UNIFORM CERTIFICATE OF ACKNOWLEDGEMENT

RPL – 299 (Outside of New York State)

STATE OF _North Carolina_ )
                           ) ss.:
COUNTY OF _Mecklenburg_ )

      On the _7th_ day of _April_ in the year 2022, before me, the undersigned, personally appeared _Brett Peiffer_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Affidavit in Support of Plaintiff's Motion for Summary Judgment and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

MATTHEW D. CAMERON
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
_08-01-2026_

_____
(Signature and office of individual taking proof)

CERTIFICATE OF CONFORMITY OF ACKNOWLEDGEMENT
NYS RPL 299-a

State of North Carolina

County of Mecklenburg

The undersigned does hereby certify that he/she is an attorney-at-law duly admitted to practice

in the State of New York, and is a resident of _____ County in the State of _____

(or that he is an attorney at law duly admitted to practice in the State of

North Carolina and residing at Mecklenburg County , State of North Carolina); that he is a

person duly qualified to make this  certificate of conformity pursuant to Section 299-a of the

Real Property Law of the State of New York; that he is fully acquainted with the laws of the

State of North Carolina pertaining to the acknowledgment or proof of deeds of real property to

be recorded therein; that the foregoing acknowledgment by  named in the foregoing instrument

taken before , a notary public (or other officer ) was taken in the manner prescribed by such

laws of the State of North Carolina, being the state in which it was taken; and that it duly

conformswith such laws and is in all respects valid and effective in such state.

Matthew Dameron
Witness my signature this   7th         day of April 2022
Attorney-at-law for the State of  North Caroline .
residing in the State of  North Caroline

8